Pages 1 – 21

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM ALSUP, JUDGE

CORPORATION, a Delaware        )
corporation,                   )
                               )
            Plaintiff,         )
                               )
            v.                 )   NO. C09-80097; C09-80098
                               )
PALM, INC., a Delaware         )
corporation,                   )
                               )
            Defendants,        )
_____)
                                   San Francisco, California
                                   Friday, May 15, 2009

                  TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff              FREEBORN & PETERS LLP
                           311 South Wacker Drive, Suite 3000
                           Chicago, IL 60606-6677
                     BY:   **JACOB D. KOERING**
                           Attorney at Law

For Plaintiff              LINER, GRODE, STEIN, YANKELEVITZ,
                           SUNSHINE, REGENSTREIF & TAYLOR LLP
                           199 Fremont Street, 20th Floor
                           San Francisco, CA 94105-2255
                     BY:   **RICHARD J. MOONEY**
                           Attorney at Law

Reported By:               **CHRISTINE TRISKA, CSR, R**PR
                           Pro-Tem Reporter

APPEARANCES CONTINUED:

For Defendant          KING AND SPALDING LLP
                       1185 Avenue of the Americas
                       New York, NY 10036-4003
                  **BY: SCOTT T. WEINGAERTNER**
                       Attorney at Law


Also Present:   Chester Day, Google, Inc.

1    Friday, May 15, 2009

2                                              8:57 A.M.

3                    P R O C E E D I N G S

4          THE CLERK:  Calling Miscellaneous Civil Case C09-80097

5    and C09-80098, Intermec Technologies versus Palm, Inc.

6          Counsel, please come forward and state your

7    appearance.

8          MR. WEINGAERTNER:  Good morning, your Honor.  Scott

9    Weingaertner of King and Spalding, Pro Hac Vice on behalf of

10   Google, Inc.

11         MR. KOERING:  Good morning, your Honor.  Jacob Koering

12   of Freeborn and Peters.  Pro Hac Vice on behalf of Intermec.

13         THE COURT:  All right.  Who wants to go first?

14         MR. WEINGAERTNER:  Your Honor, I would be happy to

15   oblige.

16         THE COURT:  Say what?

17         MR. WEINGAERTNER:  Your Honor, we would be happy to go

18   first.

19         THE COURT:  All right.  Go ahead.

20         I have a hearing at 10:00, so I'll have to wind

21   this up before 10:00, so take that into account.

22         MR. WEINGAERTNER:  Okay, your Honor.

23         THE COURT:  Mr. Koering, you may have a seat.

24         MR. KOERING:  Thank you, your Honor.

25         MR. WEINGAERTNER:  Your Honor, first of all, Google

1  thanks the Court for the opportunity to bring to the Court's

2  attention its request for a protection here in its motion to

3  quash.

4           We assure the Court that we have been in touch with

5  Intermec up until yesterday looking for a way to resolve this

6  issue but unfortunately have been unable to do so.

7           We move the Court, because we have looked very

8  closely at the subpoena, spent a lot of time looking at it,

9  talking about it with Intermec, and it's extremely

10 open-ended.  It would potentially target all of the company's

11 product, of which there are many, and the requests themselves

12 are so broad that it's almost difficult to assess the

13 difficulty with which -- and the burden which we'd need to

14 satisfy the request.

15          In essence, for each of the products it targets it

16 seeks a level of detail and burden similar to what a patent

17 infringement defendant would need to contend with, and entailing

18 two, possibly more witnesses per identified product.

19          The real difficulty in Google's view is that the scope

20 of the information requested, even for an individual

21 application, is very speculative.

22          We have asked Intermec for some theory of evidence

23 here.  We've never received it.  We've asked for an

24 identification of the claims asserted.  We have not received

25 that.  We've asked for a copy of the infringement

1   contentions, even in redacted form to get some sense of how

2   Google's information could be relevant, and we haven't

3   received that either.

4          There have been a couple of instances in which

5   Intermec has said, "Well, we'll reduce the number of

6   applications we'll be targeting for discovery."  But in each

7   instance they said basically they would start with two but

8   would not limit themselves.

9          And these are very complicated products, your

10  Honor.  And so to give your Honor a flavor of the scope,

11  their subpoena -- and this is Topic Five and Request Number

12  Five -- asks how Google applications -- and this is without

13  limitation to the applications' involvement with the Palm

14  products that are accused.

15         The underlying case in Palm's accusation of

16  infringement against Palm handheld devices that certain

17  Google products can be downloaded onto, it asks without

18  limitation how Google applications store and access data,

19  which is extremely broad, and that's without regard to even

20  use on Palm products.  So it could be basically company-wide,

21  your Honor.

22         In addition, as a way of supposedly narrowing the

23  scope, there was a letter sent on April 3rd that's appended to

24  both parties' papers, which in a way actually complicates and

25  magnifies the scope of requests.

1        And in particular, these requests ask for how the

2   client and server side -- "client," meaning the handheld

3   device, and the "server," meaning the big machines that sit

4   on the server farm somewhere of each Google product, quote,

5   unquote, "use and store information."

6        So, your Honor, that would be like asking how an

7   F-16 operates.  It may sound simple when you phrase it that

8   way, but it implicates a number of situations.

9        Your Honor, I've worked on a number of litigations

10  for Google involving litigation of specific features of one

11  specific application.  And that is actually quite a large

12  task even for one patent infringement case.

13        So what you're talking about here are any number of

14  features over any number of products with no real stopping

15  point.

16        And one point that makes clear that this is a

17  speculative operation that we're talking about is that in a

18  teleconference we had, Intermec's counsel said they wanted to

19  take discovery application by application until they found

20  one that fit its theory.

21        Your Honor, we contend that if they don't necessarily

22  know what the relevance of the requests are, it's very difficult

23  for us to even know how to respond.

24        So what we've tried to do is cap it to a small

25  manageable response -- so even if you have no theory of

1   relevance -- in an effort to respond within the time frame,

2   because they have found themselves up against the close of

3   discovery through no fault of Google's, I might add, your

4   Honor.  We're trying to find a way to get them what they

5   think they need, but apparently they are not sure what they

6   need.

7            So as a result, there are these extremely broad

8   requests.  And even as late as yesterday the requests from

9   the April 30th letter were not narrowed.  They suggested they

10  might limit it to two applications we had, but in the past

11  they haven't really stuck with that.  But even if they did,

12  we still have this problem of requiring an enormous amount of

13  digging.

14           They seem to believe that there are some readymade

15  answers sitting ready for them tied up with a bow that we can

16  simply hand off to them, which I can testify with experience

17  is not the case with complex software applications.

18           They are incredibly complex projects.  The

19  technical documentation is vast, and for a company like

20  Google the documentation tends to be communications among

21  engineers, which requires a lot of digging to figure out what

22  things mean.

23           Again, Intermec is looking for some high-level

24  documentation, and if there were something that were handy

25  for one application we certainly would be willing to try to

1  find it.  We certainly have not dug our heels in yet, refused

2  to produce.  But we're simply trying to find something that

3  is reasonable given their theory of relevance.

4          And again, we haven't seen one.  Even in their

5  briefing papers all they say is "calculated to lead to the

6  discovery of admissible evidence."  There's actually no

7  theory of how all this information would relate to their

8  case.

9          What we tried to do, your Honor, is propose an order

10  that we, to best of our ability, thought might be helpful to

11  them, which has to do with downloading a Google application onto

12  a Palm device based on our best reading of what we think their

13  claims require.

14          We found out for the first time just yesterday that

15  they have some theory of contributory infringement, although

16  it's quite vague.  We don't really understand what it is.

17          If your Honor would be interested I can perhaps

18  describe in more detail what the burden is.

19          We put in a declaration that we were able to put

20  together in relatively short order identifying that there may

21  be witnesses in other countries that we'd have to deal with

22  here.  If the Court orders we will certainly do it.  But

23  these are complicated projects.  Each feature on one of these

24  software products can involve multiple engineers.  And since

25  we don't know which features they are targeting we're not

1   sure how to respond.

2        The request for information about how something

3   stores data, for example, could differ from feature to

4   feature.  So not only is each product separately designed and

5   built and separately operated, 'cause there are separate

6   teams that don't necessarily overlap with the others, but

7   each feature has its own characteristics.

8        And to give a sense of complexity, one of the

9   applications that Intermec has targeted is Gmail.  It's an

10  online Internet mail service.  And Google has introduced a

11  new feature every week since its inception several years ago.

12  There's a lot of bells and whistles.  There's a chat

13  function.  There's ads that appear -- not just sending and

14  receiving mail.  There's a lot -- much more than meets the

15  eye that is actually going on.

16       So in sum, your Honor, we believe that the burden

17  is potentially Herculean here, and we request the Court's

18  guidance and relief to narrow it to a scope that would be

19  reasonable, particularly in view of the fact that we have not

20  yet learned exactly how Intermec believes these requests

21  would be relevant to it.

22       THE COURT:  Thank you.

23       MR. WEINGAERTNER:  Thank you, your Honor.

24       MR. KOERING:  Good morning, your Honor.  Thank you for

25  setting a hearing on this matter in short notice.  We appreciate

1  it.

2        I think before I address counsel for Google I think it

3  would be helpful for the Court to understand Google's position

4  with respect to Intermec's case and how it's going to be

5  relevant here.

6        Our client owns several patents that relate to a

7  very early description of a client-server architecture

8  system.  And while that technology has its application in

9  various different ways, in this case we're talking about a

10  client as far as a Palm handheld and a server being a

11  computer device that's accessible through a wireless

12  connection on the Internet.  So, for example, it could be an

13  enterprise e-mail server or it could be an Internet server.

14        These descriptions that I'm giving you here have

15  been -- since Intermec submitted it's subpoena to Google on

16  March 24th of this year, we've had detailed discussions with

17  counsel.  So this should give some flavor to the back and forth

18  between the parties.

19        The information that Intermec is requesting relative

20  to Google's position here is that we want to understand when

21  somebody is using Palm's product they can open up a Web browser

22  and access Gmail.

23        If I get a listing of e-mails, if I click on that

24  e-mail:  What request is sent to Google servers?  How does

25  Google's server process that?  Locate the e-mail that's

1  stored in the server?  How are those e-mails organized in the

2  server?  And then, how does it get that information back to

3  the person who clicked on it?  That's it.

4          Now, we've explained this to counsel for Google

5  before, both inside counsel and then when it got transitioned to

6  outside counsel.  They've continued to say what I can only

7  characterize as litigation-based confusion.

8          These same requests went to Microsoft, Verizon,

9  AT&T and Sprint, and they understood what we were asking for

10 and not only complied with the subpoena but have produced

11 people who had the capability to talk.

12         So we think that the -- really the scope of the

13 request, especially given the two -- nearly two months of time

14 we spent explaining it are both within Google's grasp and

15 readily understandable.

16         Yesterday was the first time I've spoken with Mr.

17 Weingaertner, and it was the first time that he had expressed to

18 me this concern about burden.

19         Now, I haven't seen the declaration.  I did ask him

20 yesterday.  Perhaps he could give me an idea why it's

21 burdensome.  Perhaps we could make that the scope of our

22 request --

23         THE COURT:  How can you say that -- I've read these

24 e-mails and they were talking about burden some time ago.

25         MR. KOERING:  I'm sorry.  It was the first time I

1   spoke with him about -- about burden.  But as of yet, the only

2   time --

3           THE COURT:  Well, are you trying to lead me to believe

4   that they had not raised the burden issue before yesterday?

5           MR. KOERING:  No, your Honor.

6           THE COURT:  I think that's what you were trying to do,

7   Counsel.

8           MR. KOERING:  Oh, I'm sorry.

9           THE COURT:  You better be very clear.  They raised the

10  burden issue a long time ago.

11          Don't you agree with that?

12          MR. KOERING:  I've seen it in e-mails; yes, your

13  Honor.  Yes --

14          THE COURT:  Don't try to lead me to believe that they

15  are just raising this argument for purposes of this litigation.

16  They raised this from day one.

17          MR. KOERING:  I apologize if you felt that I misled.

18          THE COURT:  All right.  I forgive you.  Go ahead.

19          MR. KOERING:  We have not yet seen the declaration,

20  and so being able to understand concretely what the burden was

21  might help narrow -- perhaps they think that our request is

22  going to something that we don't want.

23          For example, counsel had mentioned a chat

24  application on Google, Google mail.  That's not necessarily

25  something that we're interested in.

1          Again, from a top-level perspective we feel the

2    request is relevant to the role that the server is going to play

3    in that client-server architecture.  And being able to

4    understand how a request goes to Google's servers, how they

5    store and access data from that server, and how they return it

6    is necessary and relevant to our case.

7          Now, so far Rule 45 allows us to seek discovery from

8    third parties that is likely to lead to the discovery of

9    admissible evidence.

10          From our perspective the description that I gave you

11    is the same description that we'd given to the folks at Google.

12    It's information that is likely to lead to the discovery of

13    admissible evidence relative to the role that a server plays

14    when a Palm handheld is used in that system.

15          And Google's -- the understanding of how Google's

16    servers operate here is not only relevant, it's only

17    available from Google, and it's necessary to our case.

18          And so we're asking your Honor to compel compliance

19    with the subpoena, and if it would help narrow the burden

20    we'd like to focus on three applications and three

21    applications only:  Google Mail; Google Maps; and Google

22    Calendar.

23          Thank you, your Honor.

24          THE COURT:  Where does it say in this paperwork that

25    was submitted -- is there something under oath that states that

1  the same subpoena was served on Microsoft and Microsoft complied

2  fully?

3          MR. KOERING:  There is not a declaration in there to

4  that effect.

5          THE COURT:  So you're just saying that.

6          MR. KOERING:  I'm representing that to the Court, your

7  Honor.

8          THE COURT:  That is not part of the sworn record.  I

9  want that to be clear.

10         MR. KOERING:  I understand that, your Honor.

11         THE COURT:  All right.

12         Anything more on your side, Mr. Weingaertner?

13         MR. WEINGAERTNER:  Yes, your Honor.

14         Your Honor, with all due respect we -- even today

15  just now we haven't had anything more than a conclusory

16  statement that all this Google information is important to

17  their case.

18         They've never said anything.  There was nothing at

19  all in their brief other than "calculated to lead to the

20  discovery of admissible evidence."

21         And in each case we've looked at there needs to be

22  some showing that it relates to their case.  We really,

23  honestly have no idea other than some colloquy over the phone

24  yesterday, your Honor.

25         With respect to the declaration that they said they

1   didn't have, we served it with our papers.  We're not sure

2   why they wouldn't have seen it, your Honor.  It was served on

3   the day that we filed it in this Court.

4            THE COURT:  Which declaration are you referring to?

5            MR. WEINGAERTNER:  Yes, your Honor.  There is a

6   declaration of Edmund Choi, which -- it might be a little bit

7   confusing, but it's appended to a declaration that one of our

8   associates who compiled the e-mails --

9            THE COURT:  Let's be -- I want this to be a fair

10  proceeding, so let's identify what declaration it is that you're

11  talking about.

12           MR. WEINGAERTNER:  Absolutely, your Honor.  That would

13  be --

14           THE COURT:  Is this the one that's Exhibit Number F?

15           MR. WEINGAERTNER:  Yes, sir.  Yes, your Honor.

16           THE COURT:  Edmund Choi?

17           MR. WEINGAERTNER:  Yes, your Honor.

18           THE COURT:  Show that to counsel right now.  Let's

19  see -- I can see that possibly there could be confusion, because

20  it's a declaration to a declaration.

21           MR. KOERING:  Is it F?

22           MR. WEINGAERTNER:  Counsel now admits that he has seen

23  the declaration.

24           THE COURT:  You have seen that one?

25           MR. KOERING:  Your Honor, I understood him to be

1    referring to a new declaration this morning.  I misunderstood.

2              THE COURT:  You did get this information?

3              MR. KOERING:  If this is defining what they claim to

4    be burden, yes, I've seen this before.

5              MR. WEINGAERTNER:  Your Honor, if I might -- one

6    additional point regarding their description of, you know, how

7    Gmail would be sent and received by a server, their requests are

8    not limited to that, your Honor.

9              They said that -- and it's been repeatedly the case

10   that they'll say, "Well, we're going to start with this, and

11   then we'll keep looking until we find something that fits."

12             And on the papers and correspondence they have

13   never -- never reduced, only increased the scope.  They have

14   this April 30th letter which has extremely broad language.

15   And what we're afraid of is that unless there's something to

16   prevent it, they will continue to hunt and peck and look for

17   things that will fit their -- a theory that's not only to

18   them -- a theory that they haven't shared even with the

19   Court.

20             THE COURT:  When did this litigation start in

21   Delaware?

22             MR. WEINGAERTNER:  About two years ago, roughly, your

23   Honor, as far as I understand.

24             THE COURT:  Mr. Koering, when did it start?

25             MR. KOERING:  He's correct.  It was about two years

 1 | ago.

 2 |            MR. WEINGAERTNER:  Your Honor, one additional thing if

 3 | I might.

 4 |            We believe infringement contentions have been

 5 | served.  We don't know why we couldn't have been sent a copy

 6 | in redacted form, and from what we understand Google was not

 7 | identified in the contentions, although Microsoft was.

 8 |            So to the extent -- although we're unable to prove

 9 | it, your Honor, because we don't have a copy on information

10 | and relief, having spoken just a moment ago with Palm's

11 | counsel we understand that to be the case.

12 |            THE COURT:  What to be the case?

13 |            MR. WEINGAERTNER:  Oh, that the infringement

14 | contentions, which were never provided to us, that Intermec has

15 | against Palm identified Microsoft in the contentions but never

16 | identified Google.

17 |            So even as of their contentions they had no notion

18 | of Google's involvement, which tends to confirm that -- I

19 | hate to use the term "fishing expedition," your Honor,

20 | because it's cliche, but it very much seems that that's

21 | what's going on.

22 |            THE COURT:  All right.  Is that it?

23 |            MR. KOERING:  Your Honor, I would like --

24 |            MR. WEINGAERTNER:  One additional point, your Honor,

25 | to give a sense of the magnitude.

1          There are 10 to 15 specific applications, possibly

2    more that could eventually be involved if they continue to

3    persist in having this notion of, "pick one, see if it fits

4    their theory; pick another, see if it fits their theory."

5          Again, within each of those there may be many

6    different features, so it's a very large-dimension problem

7    that we're trying to contend with, your Honor.

8          THE COURT:  Has the Judge in Delaware made a specific

9    finding that the evidence sought by this subpoena is relevant to

10   an issue in that case?

11         MR. WEINGAERTNER:  As far as I understand, your Honor,

12   no.

13         THE COURT:  Mr. Koering, what do you say to that?

14         MR. KOERING:  Your Honor, nobody has ever brought up

15   to the District Court in Delaware whether or not the subpoena is

16   relevant to the issue in the case.

17         What I can tell you is that the contentions

18   that -- excuse me.  The contentions that Mr. Weingaertner is

19   referring to are over a yeah-and-a-half old.  They were

20   preliminary infringement contentions, and the parties have

21   developed discovery since that point.

22         There's not a required supplementation date for

23   those, although the parties are planning on supplementing

24   after further discovery.

25         So to claim that these issues are fishing

1    expeditions because they don't appear in a

2    year-and-a-half-old document doesn't necessarily mean --

3    doesn't follow.

4             I also -- relative to this particular issue, a

5    subpoena does not require us to submit infringement

6    contentions, nor as counsel for Google has requested

7    claim-construction positions or a covenant not to sue.  Those

8    were the demands that were placed on us in order for us to

9    agree -- in order for us to get discovery.

10            And then by the time we got discovery, or by the

11   time we came to some sort of an agreement, we were informed

12   that counsel for Google was going to allow us to depose

13   somebody that would tell us how you open up the Web browser,

14   click on a link, and download a program to a Palm device.

15            We think our -- we've spent a month-and-a-half

16   describing in detail how we thought that this was relevant to

17   our case.  We think that the requests themselves show the

18   relevance, and so we're asking compliance with the subpoena.

19            THE COURT:  Do we have any declaration here by your

20   expert in the Delaware case explaining how the information

21   sought would be relevant?

22            MR. KOERING:  No, your Honor.

23            THE COURT:  All right.  Anything more?

24            MR. WEINGAERTNER:  Your Honor, one point.

25            THE COURT:  Let me ask.  Anything more by you,

1  Mr. Koering?

2          MR. KOERING:  No, your Honor.

3          MR. WEINGAERTNER:  Your Honor, I would like to correct

4  a point raised by counsel.

5          Google did not make any condition to receive a

6  covenant not to sue.  No way did we condition a response on

7  that.  We simply asked the intentions of Intermec, what their

8  plans were with respect to that; whether they would do it or

9  not so we would at least know their position, and they simply

10 didn't respond.

11         So the letters that would bear that out we have in

12 no way conditioned.  We mentioned it in a similar letter, but

13 it's not a fair characterization, your Honor.  And I

14 represent to the Court we certainly are not imposing that as

15 any condition to respond to the subpoena.

16         THE COURT:  All right.  I've heard both sides.  The

17 Court will try to get an order out today but at the latest on

18 Monday that deals with this problem.  Thank you.

19         MR. KOERING:  Thank you, your Honor.

20         MR. WEINGAERTNER:  Thank you, your Honor.

21         (The proceedings concluded at 9:20 a.m.)

22

23

24

25

CERTIFICATE OF REPORTER

          I, CHRISTINE TRISKA, Pro-Tem Reporter for the United

States Court, Northern District of California, hereby certify

that the foregoing proceedings in C09-80097 and C09-80098, MISC

Intermec Technologies v. Palm, Inc., were reported by me, a

certified shorthand reporter, and were thereafter transcribed

under my direction into typewriting; that the foregoing is a

full, complete and true record of said proceedings as bound by

me at the time of filing.

     The validity of the reporter's certification of

said transcript may be void upon disassembly and/or

removal from the court file.


          _____/S/ Christine Triska_____

          Christine Triska, CSR 12826, CSR, RPR

               Friday, May 15, 2009