1 | Richard J. Mooney, Esq. (SBN: 176486)
    rmooney@linerlaw.com
2 | Liner Grode Stein Yankelevitz
    Sunshine Regenstreif & Taylor LLP
3 | 199 Fremont Street, 20th Floor
    San Francisco, CA 94105-2255
4 | Telephone: (415) 489-7700

5 | Jacob D. Koering, Esq. (admitted *pro hac vice*)
    jkoering@freebornpeters.com
6 | Freeborn & Peters LLP
    311 South Wacker Drive #3000
7 | Chicago, IL 60606
    Telephone: (312) 360-6000

8 |
    Attorneys for Intermec Technologies Corp.

9 |

10 |              **UNITED STATES DISTRICT COURT FOR**

11 |            **THE NORTHERN DISTRICT OF CALIFORNIA**

12 |

13 | **In re Miscellaneous Action to Enforce**         ) Case No. C 09-80098 MISC WHA
     **Compliance with Subpoena**                       )
14 |                                                     )
     Underlying case:                                    ) Underlying Case No.:
15 |                                                     ) C.A. No. 07-272-SLR
     Intermec Technologies Corp., a Delaware             ) (Pending in the District of Delaware)
16 | corporation,                                        )
                                                         ) **Declaration of Jeffrey Hansen in Support**
17 |              Plaintiff,                              ) **of Intermec Response to Order To Show**
                                                         ) **Cause re Sanctions**
18 |              v.                                      )
                                                         ) Date:  No hearing set
19 | Palm, Inc., a Delaware Corporation,                 ) Time:  No hearing set
                                                         ) Crtrm:  No hearing set
20 |              Defendant.                              )
                                                         )
21 |                                                     )
                                                         )
22 |                                                     )
                                                         )
23 | _____             )
                                                         )
24 |

25 |

26 |

27 |

28 |

I, Jeffrey M. Hansen, hereby declare as follows:

1.      I am a resident of the State of Illinois, and am over 18 years of age.  I have personal knowledge of the facts stated herein, and would testify to the same if called upon to do so.

2.      I am counsel for Intermec Technologies Corporation in this matter and submit this Declaration in support of Intermec Technologies Corporation's Response to Order To Show Cause re Sanctions.

3.      I was involved in the drafting of the subpoena to Google that is the subject of this proceeding.  The document requests in the subpoena to Google were specifically drafted to require only "documents sufficient to show" for each topic of inquiry in order to minimize any burden on Google in replying to the subpoena.  As was explained to Google over the period of my discussions with its counsel regarding the subpoena, if it could locate just one document that fully answered an area of inquiry, that would be all the document production required for that request.

4.      I was also involved in issuing third-party subpoenas to other companies seeking information similar to that requested of Google for Intermec's case against Palm -- subpoenas which were issued at the same time as the ones issued to Google.  Those companies (Verizon Wireless, Sprint Nextel, Microsoft, and AT&T) have all already complied, or are scheduled to comply in the next several weeks, following discussions and negotiations between counsel for Intermec and the subpoena respondents.  Most productions from these other companies have averaged one hundred pages.  As it is the most similar to the subpoena issued to Google, attached hereto as Exhibit A is a true and correct copy of the subpoena issued to Microsoft out of the Western District of Washington.

5.      I was involved in the communications and negotiations with Google's inside and outside counsel regarding Intermec's subpoena.

6.      I initially had a series of calls and email exchanges with Shana Stanton, an in-house attorney for Google.

7.      The subpoena to Google was initially issued out of the District of Delaware (Attached hereto as Exhibit B is a true and correct copy of the subpoena issued to Google out of the

1

*Intermec Technologies Corp. v. Palm, Inc.*, Case No. C 09-80098 MISC WHA (Underlying Case No. 07-272-SLR (D. Del.)) Hansen Decl. ISO Response to OSC re Sanctions

0015512

1   District of Delaware dated March 2, 2009).  At the request of Google, on its representation that the

2   documents and information responsive to Intermec's subpoena are located in Northern California,

3   the subpoena was reissued out of the United States District Court for the Northern District of

4   California.

5       8.      During each of the calls with Ms. Stanton, I emphasized that we were seeking to

6   minimize the impact of the subpoena on Google, that we were seeking documents and testimony

7   describing the methods in which Google applications operate at a general level, and that Intermec

8   was not seeking the trade secrets of Google relating to its applications or their operation.  I also

9   made it clear multiple times that we would be happy to answer any questions Google may have

10  concerning the subpoena.

11      9.      Ms. Stanton requested information related to Intermec's lawsuit against Palm,

12  including the underlying complaint, protective order, and the particular patent at issue that most

13  related to the information sought from Google.  All of these items were provided to Ms. Stanton

14  and Google was encouraged to produce under the safeguards of the protective order.  Intermec and

15  Palm have exchanged extremely sensitive business information under the same protective order.

16      10.     A follow-up phone call with Ms. Stanton occurred on April 10, 2009 to allow

17  Intermec to further explain the lawsuit, the patent, and how the information sought from Google

18  related to both.  I, along with my partner, Lee Hutchinson, participated in the phone call with Ms.

19  Stanton, answering all of the questions she had at that time.

20      11.     During the course of our conversations with Ms. Stanton, we also discussed limiting

21  the number of Google applications that would be the subject of the subpoena.  Our initial

22  discussions focused on providing an initial list of applications that were of the highest possible

23  relevance, based on our good faith beliefs about the operation of Google's applications.  We

24  suggested limiting the initial applications about which information would be gathered to three:

25  Gmail, Google Maps, and Google Calendar.  A true and correct copy of an e-mail dated April 15,

26  2009 from Jeffrey M. Hansen to Shana Stanton is attached hereto as Exhibit C.

27      12.     An additional phone call with Ms. Stanton was scheduled at her request to further

28  explain the information sought by Intermec, a call in which Ms. Stanton wished to have an

additional patent lawyer from Google participate.  A true and correct copy of an e-mail dated April

20, 2009 from Shana Stanton to Jeffrey M. Hansen is attached hereto as Exhibit D.

2

*Intermec Technologies Corp. v. Palm, Inc.*, Case No. C 09-80098 MISC WHA (Underlying Case No. 07-272-SLR (D. Del.))
Hansen Decl. ISO Response to OSC re Sanctions

0015512

13.     On the day that the call was scheduled, however, Ms. Stanton did not answer her phone at the agreed time.  After I left voicemails and emails for her to set up another time for the call, she referred me to Mr. Scott Weingaertner of King & Spaulding LLP for further discussions regarding the subpoena.  A true and correct copy of an e-mail dated April 27, 2009 from Shana Stanton to Jeffrey M. Hansen is attached hereto as Exhibit E.

14.     Again, in my phone calls with Mr. Weingaertner, I emphasized that Intermec was seeking to minimize the impact on Google.  In order to explain Intermec's desire to minimize the impact of the subpoena, on multiple occasions, as I had done with Ms. Stanton, I emphasized that: (1) Intermec was seeking, as stated in the subpoena, only "documents sufficient to show" for each topic of inquiry; (2) that if documents available to the "public" (i.e., documents provided to developers, other industry professionals, etc.) were sufficient to answer our areas of inquiry, that would be sufficient; (3) that if any responsive document was considered too commercially sensitive to produce (i.e computer code, etc.), that we should discuss it first, because it was probably not the type of document we were seeking as it would probably be too specific or detailed in its information; and (4) that the type of documents we were seeking could be best described as a "Google For Dummies" overview concerning the operation of the Google applications.

15.     Mr. Weingaertner and I also discussed limiting the amount of Google applications that would be the subject of the subpoena.

16.     During the course of our conversations, it did not appear that Mr. Weingaertner was informed by his client of our previous discussions regarding the relevance of Intermec's subpoena and the specifics of the information Intermec was seeking, as Mr. Weingaertner asked questions that had been answered over the course of Intermec's previous discussions with Google.  Moreover, despite repeated offers to Mr. Weingaertner of having one or more of the patent/technical specialists on our legal team walk him through the information Intermec was seeking, and answer any of his questions at a higher level of detail, Mr. Weingaertner never requested such a call.

17.     While we negotiated in good faith to come to a compromise regarding Google's response to the subpoena, with an upcoming discovery deadline of which Google was informed, and an ever-increasing list of demands from Google – including documents detailing Intermec's litigation position against Palm, and a requested covenant not to sue Google on the Intermec

3

*Intermec Technologies Corp. v. Palm, Inc.*, Case No. C 09-80098 MISC WHA (Underlying Case No. 07-272-SLR (D. Del.))
Hansen Decl. ISO Response to OSC re Sanctions

0015512

1  patents in suit in its case against Palm – Intermec reluctantly filed a motion to compel as it no

2  longer had time to negotiate.  Google's insistence on receiving a covenant not to sue from Intermec

3  led to a impasse in the negotiations.  Intermec's final offer to Google was to limit their search to

4  information to two Google applications and how those applications operate on Palm handhelds.

5  True and correct copies of a letter dated April 30, 2009 from Jeffrey M. Hansen to Scott T.

6  Weingaertner, a letter dated May 5, 2009 from Scott T. Weingaertner to Jeffrey M. Hansen, and an

7  e-mail dated May 8, 2009 from Jeffrey M. Hansen to Scott Weingaertner are attached hereto as

8  Exhibits F, G, and H, respectively

       18.     The negotiations with Google continued up to May 14, 2009.

9         19.     Throughout all of the discussions with Google, while Google stated that Intermec's

10  subpoena was unduly burdensome, no specifics beyond the fact that multiple people worked on

11  each application in multiple countries was ever offered to back up that claim.  Even asked point-

12  blank during a call on May 14, 2009 to give specifics regarding that burden so that Intermec could

13  better understand and respond to it, Mr. Weingaertner offered no such specifics.

14         20.     Intermec had previously pursued the information sought in its subpoena to Google

15  from Palm, but Palm has disclaimed any knowledge of the Google subpoena topics.

16         21.     Attached hereto as Exhibit I is a true and correct copy of the Declaration of Ray W.

17  Nettleton, Ph.D.

18         22.     Attached hereto as Exhibit J is a true and correct copy of the Stipulated Protective

19  Order entered in *Intermec Technologies Corp. v. Palm, Inc.*, Case No. C.A. No. 07-272-SLR,

20  currently pending in United States District Court for the District of Delaware.

21

22        Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is

23  true and correct and that this declaration is signed on May 22, 2009.

24

25  *Jeffrey M. Hansen*

26  Jeffrey M. Hansen

27

28  1831097v1/24618-0037

4

0015512

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

3/26

**INTERMEC TECHNOLOGIES CORP.,**

Plaintiff,

v.

**PALM, INC.,**

Defendant.

**SUBPOENA IN A CIVIL CASE**

Civil Action No: 07-272-SLR-LPS
Pending in the United States District Court
for the District of Delaware

TO: Microsoft Corporation
c/o PTSGE Corporation
925 4th Avenue, Suite 2900
Seattle, WA 98104

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case:  See Exhibit A

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| YOM Reporting<br>520 Pike Street<br>Suite 1320<br>Seattle, WA 98101 | April 24, 2009<br>9:00 a.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See Exhibit A

| PLACE | DATE AND TIME |
|---|---|
| YOM Reporting<br>520 Pike Street<br>Suite 1320<br>Seattle, WA 98101 | April 17, 2009<br>9:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Plaintiff  [signature] | March 26, 2009 |

| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER | TELEPHONE |
|---|---|
| David S. Becker<br>FREEBORN & PETERS LLP<br>311 South Wacker Drive, Suite 3000<br>Chicago, IL 60606 | (312) 360-6391 |

| DATE | PLACE |
|---|---|

| SERVED | Date | Place |
|---|---|---|

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct:

Executed on: _____

| DATE | SIGNATURE OF SERVER |
|---|---|

ADDRESS OF SERVER

RULE 45, FEDERAL RULES OF CIVIL PROCEDURE, PARTS C & D

(c)  PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except

that, subject to the provision of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## EXHIBIT A

## DEFINITIONS

1.      "Intermec" means Plaintiff Intermec Technologies Corp., and includes any and all of its predecessors, predecessors-in-interest, successors, successors-in-interest, subsidiaries, divisions, affiliates, and affiliated entities, as well as their officers, directors, agents, employees, and representatives.

2.      "Palm" means Defendant Palm, Inc., and includes any and all of its predecessors, predecessors-in-interest, successors, successors-in-interest, subsidiaries, divisions, affiliates, and affiliated entities, as well as their officers, directors, agents, employees, and representatives.

3.      "Microsoft" means Microsoft Corporation, and includes any and all of its predecessors, predecessors-in-interest, successors, successors-in-interest, subsidiaries, divisions, affiliates, and affiliated entities, as well as their officers, directors, agents, employees, and representatives.

4.      "Palm Products" refers to the Palm® Centro™, Treo™ 680, Treo™ 700p, Treo™ 700w, Treo™ 700wx, Treo™ 750, Treo™ 755p Treo™ 800w and Treo™ Pro smartphones.

5.      "Document(s)" is used in the same manner as that term is defined in Fed. R. Civ. P. 34(a) and shall include, without limitation, electronically stored information ("ESI"), things, project proposals, memos, notes, inventor notebooks, invention disclosures, source code (including comments if any), object code, communications regarding product development, revision histories, flowcharts, drawings, specifications, documents related to testing, status

reports or summaries, computer simulations, logic diagrams, and preliminary technical documentation, along with every draft or non-identical copy of the foregoing.

6.    "Electronically Stored Information" or "ESI" is used in the same manner as outlined in the Federal Rules of Civil Procedure and should also be interpreted to include data stored in, or accessible through, computer or other information retrieval systems and includes all non-identical copies of such data. ESI includes, but is not limited to, electronic spreadsheets, databases with all records and fields and structural information (including Lotus Notes Discussion Databases and other online dialogs), charts, graphs and outlines, arrays of information and all other information used or produced by any software. Thus, Palm must produce documents that exist in electronic form, including data stored in personal computers, portable computers, workstations, minicomputers, personal data assistants, Blackberry or other similar devices, instant messaging text files, archival voice storage systems, group and collaborative tools, electronic messaging devices, mainframes, servers, backup disks and tapes, archive disks and tapes, portable hard drives, memory cards, zip drives, iPods or other similar devices, cellphones and any other forms of online or offline storage. Further, unless the parties agree otherwise, ESI responsive to the Requests herein must be made (and if necessary, translated by you) in reasonably useable form and produced.

7.    "Thing" means any physical specimen or tangible item in your possession, custody, or control.

8.    The term "person" means any natural person in any capacity, and all entities of every description, including, by way of example but not limitation, associations, organizations, companies, partnerships, joint ventures, corporations, trusts and estates, and all divisions, departments and other such units thereof.

2

9.     The terms "concerning," "regarding," "related to," and "relating to" are used in their broadest sense and include all matters referring to, describing, evidencing, or constituting the referenced subject(s).

10.    The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request any information or documents that might otherwise be construed to be outside of its scope.

11.    The use of the singular form of any word includes the plural and vice versa.

12.    The use of any tense of a verb shall be construed to include also within its meaning all of the tenses of that verb.

13.    The terms "any," "all," and "every" mean each and every.

## INSTRUCTIONS

1.     To the extent any Document Request seeks documents also covered by any other Document Request(s), it is for purposes of completeness only, and should in no way be construed as limiting or otherwise narrowing any of the other Requests herein.

2.     These Requests extend to all documents in the possession, custody, and/or control of Microsoft, as well as all documents in the possession, custody, or control of persons or entities under Microsoft's control.

3.     In the event that more than one copy of a document exists, Microsoft should produce the original and each non-identical copy of each document or other tangible thing requested herein that is in Microsoft's possession, custody or control, or the control of its agents, attorneys, accountants, or employees.

3

4.     Microsoft should comply with the requirements of Rule 26(b)(5) of the Federal Rules of Civil Procedure regarding claims of privilege or protection of trial preparation materials.

5.     These Requests shall be deemed to be continuing in nature to the fullest extent permitted by law.  If further responsive information comes into the possession or attention of Microsoft or its attorneys at any time during the course of this proceeding, such information must be provided as required by the Federal Rules of Civil Procedure.

## DOCUMENT REQUESTS

1.     Documents created and maintained in the ordinary course of business sufficient to show the manner in which Microsoft Outlook Mobile, when operating on the Palm Products, stores data on the on-board memory of the Palm Products.

2.     Documents created and maintained in the ordinary course of business sufficient to show the manner in which Microsoft Outlook Mobile, when operating on the Palm Products, sorts data and records.

3.     Documents created and maintained in the ordinary course of business sufficient to show the manner in which a Microsoft Exchange Server stores email messages and how it sorts such messages and data to be found pursuant to later requests or searches.

4.     Documents created and maintained in the ordinary course of business sufficient to show the manner in which disk space is formatted on a Microsoft Exchange Server by the operating system (such as Windows Server).

5.     Documents created and maintained in the ordinary course of business sufficient to show the manner in which Internet Explorer Mobile operates on the Palm Products, including how it utilizes javascript.

6. Documents created and maintained in the ordinary course of business sufficient to show the manner in which Microsoft Sharepoint (both the server and the services/software) operates on the Palm Products, including how it allocates data and memory, sorts data and records, and responds to requests and searches.

7. Documents created and maintained in the ordinary course of business sufficient to show the manner in which Microsoft Exchange Server formats a request to access or store information on a server hard drive.

8. Documents created and maintained in the ordinary course of business sufficient to show the manner in which Windows Server software formats a request to access or store information on a server hard drive.

9. Documents created and maintained in the ordinary course of business sufficient to show the file system architecture used by Microsoft Exchange Server and Microsoft Server and the protocols used to access it.

## DEPOSITION TOPICS

1. The manner in which Microsoft Outlook Mobile, when operating on the Palm Products, stores data on the on-board memory of the Palm Products.

2. The manner in which Microsoft Outlook Mobile, when operating on the Palm Products, sorts data and records.

3. The manner in which a Microsoft Exchange Server stores email messages and how it sorts such messages to be found pursuant to later requests or searches.

4. The manner in which disk space is formatted on a Microsoft Exchange Server by the operating system (such as Windows Server).

5

5.     The manner in which Internet Explorer Mobile operates on the Palm Products, including how it utilizes javascript.

6.     The manner in which Microsoft Sharepoint (both the server and the services/software) operates on the Palm Products, including how it allocates data and memory, sorts data and records, and responds to requests and searches.

7.     The manner in which Microsoft Exchange Server formats a request to access or store information on a server hard drive.

8.     The manner in which Windows Server software formats a request to access or store information on a server hard drive.

9.     The file system architecture used by Microsoft Exchange Server and Microsoft Server and the protocols used to access it.

6

# EXHIBIT B

# UNITED STATES DISTRICT COURT

## DISTRICT OF DELAWARE

**INTERMEC TECHNOLOGIES CORP.,**

Plaintiff,

v.

**PALM, INC.,**

Defendant.

### SUBPOENA IN A CIVIL CASE

Civil Action No: 07-272-SLR-LPS
Pending in the United States District Court
for the District of Delaware

TO: Google Inc.
C/O THE CORPORATION TRUST COMPANY
CORPORATION TRUST CENTER
1209 ORANGE STREET
WILMINGTON, DE 19801

| YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case. | | |
|---|---|---|
| PLACE OF TESTIMONY | COURTROOM | |
| | DATE AND TIME | |

| YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case:  See Exhibit A | |
|---|---|
| PLACE OF DEPOSITION<br>**Corbeet & Associates**<br>**230 N. Market Street**<br>**Wilmington, DE 19899** | DATE AND TIME<br>March 16, 2009<br>9:00 a.m. |

| YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See Exhibit A | |
|---|---|
| PLACE<br>**Corbeet & Associates**<br>**230 N. Market Street**<br>**Wilmington, DE 19899** | DATE AND TIME<br>March 9, 2009<br>9:00 a.m. |

| YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below. | |
|---|---|
| PREMISES | DATE AND TIME |

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]*<br>Attorney for Plaintiff | March 2, 2009 |

| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER | TELEPHONE<br>(312) 360-6391 |
|---|---|
| David S. Becker<br>FREEBORN & PETERS LLP<br>311 S. Wacker Drive, Ste 3000<br>Chicago, IL 60606 | |

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| | Date | Place |

SERVED

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct:

Executed on: _____

| DATE | SIGNATURE OF SERVER |
|---|---|

| | ADDRESS OF SERVER |
|---|---|

RULE 45, FEDERAL RULES OF CIVIL PROCEDURE, PARTS C & D

(c)  PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except

that, subject to the provision of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## EXHIBIT A

## DEFINITIONS

1.     "Intermec" means Plaintiff Intermec Technologies Corp., and includes any and all of its predecessors, predecessors-in-interest, successors, successors-in-interest, subsidiaries, divisions, affiliates, and affiliated entities, as well as their officers, directors, agents, employees, and representatives.

2.     "Palm" means Defendant Palm, Inc., and includes any and all of its predecessors, predecessors-in-interest, successors, successors-in-interest, subsidiaries, divisions, affiliates, and affiliated entities, as well as their officers, directors, agents, employees, and representatives.

3.     "Google" means Google Inc., and includes any and all of its predecessors, predecessors-in-interest, successors, successors-in-interest, subsidiaries, divisions, affiliates, and affiliated entities, as well as their officers, directors, agents, employees, and representatives.

4.     "Palm Products" refers to the Palm® Centro™, Treo™ 680, Treo™ 700p, Treo™ 700w, Treo™ 700wx, Treo™ 750, Treo™ 755p Treo™ 800w and Treo™ Pro smartphones.

5.     "Document(s)" is used in the same manner as that term is defined in Fed. R. Civ. P. 34(a) and shall include, without limitation, electronically stored information ("ESI"), things, project proposals, memos, notes, inventor notebooks, invention disclosures, source code (including comments if any), object code, communications regarding product development, revision histories, flowcharts, drawings, specifications, documents related to testing, status reports or summaries, computer simulations, logic diagrams, and preliminary technical documentation, along with every draft or non-identical copy of the foregoing.

6.      "Electronically Stored Information" or "ESI" is used in the same manner as outlined in the Federal Rules of Civil Procedure and should also be interpreted to include data stored in, or accessible through, computer or other information retrieval systems and includes all non-identical copies of such data.  ESI includes, but is not limited to, electronic spreadsheets, databases with all records and fields and structural information (including Lotus Notes Discussion Databases and other online dialogs), charts, graphs and outlines, arrays of information and all other information used or produced by any software.  Thus, Palm must produce documents that exist in electronic form, including data stored in personal computers, portable computers, workstations, minicomputers, personal data assistants, Blackberry or other similar devices, instant messaging text files, archival voice storage systems, group and collaborative tools, electronic messaging devices, mainframes, servers, backup disks and tapes, archive disks and tapes, portable hard drives, memory cards, zip drives, iPods or other similar devices, cellphones and any other forms of online or offline storage.  Further, unless the parties agree otherwise, ESI responsive to the Requests herein must be made (and if necessary, translated by you) in reasonably useable form and produced.

7.      "Thing" means any physical specimen or tangible item in your possession, custody, or control.

8.      The term "person" means any natural person in any capacity, and all entities of every description, including, by way of example but not limitation, associations, organizations, companies, partnerships, joint ventures, corporations, trusts and estates, and all divisions, departments and other such units thereof.

9.     The terms "concerning," "regarding," "related to," and "relating to" are used in their broadest sense and include all matters referring to, describing, evidencing, or constituting the referenced subject(s).

10.     The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request any information or documents that might otherwise be construed to be outside of its scope.

11.     The use of the singular form of any word includes the plural and vice versa.

12.     The use of any tense of a verb shall be construed to include also within its meaning all of the tenses of that verb.

13.     The terms "any," "all," and "every" mean each and every.

14.     "Google Applications" means any and all software applications offered by Google, including, but not limited to, Google Maps, Google Calendar, Google Docs, Gmail, and Picasa.

## INSTRUCTIONS

1.     To the extent any Document Request seeks documents also covered by any other Document Request(s), it is for purposes of completeness only, and should in no way be construed as limiting or otherwise narrowing any of the other Requests herein.

2.     These Requests extend to all documents in the possession, custody, and/or control of Google, as well as all documents in the possession, custody, or control of persons or entities under Google's control.

3.     In the event that more than one copy of a document exists, Google should produce the original and each non-identical copy of each document or other tangible thing

3

requested herein that is in Google's possession, custody or control, or the control of its agents, attorneys, accountants, or employees.

4.     Google should comply with the requirements of Rule 26(b)(5) of the Federal Rules of Civil Procedure regarding claims of privilege or protection of trial preparation materials.

5.     These Requests shall be deemed to be continuing in nature to the fullest extent permitted by law.  If further responsive information comes into the possession or attention of Google or its attorneys at any time during the course of this proceeding, such information must be provided as required by the Federal Rules of Civil Procedure.

### DOCUMENT REQUESTS

1.     Documents created and maintained in the ordinary course of business sufficient to show the manner in which Google Applications, such as Google Maps, Google Calendar, Google Docs, Gmail, and Picasa, are accessed by a person using Palm's Blazer browser.

2.     Documents created and maintained in the ordinary course of business sufficient to show the manner in which Google Applications, such as Google Maps, Google Calendar, Google Docs, Gmail, and Picasa, are accessed by a person using Microsoft's Internet Explorer Mobile browser (also known as IE Mobile).

3.     Documents created and maintained in the ordinary course of business sufficient to show the manner in which Google Applications, such as Google Maps, Google Calendar, Google Docs, Gmail, and Picasa, communicate information to Palm Products.

4

4.     Documents created and maintained in the ordinary course of business sufficient to show the manner in which Palm Products communicate information to Google Applications, such as Google Maps, Google Calendar, Google Docs, Gmail, and Picasa.

5.     Documents created and maintained in the ordinary course of business sufficient to show the manner in which Google Applications, such as Google Maps, Google Calendar, Google Docs, Gmail, and Picasa, store and access data.

## DEPOSITION TOPICS

1.     The manner in which Google Applications, such as Google Maps, Google Calendar, Google Docs, Gmail, and Picasa, are accessed by a person using Palm's Blazer browser.

2.     The manner in which Google Applications, such as Google Maps, Google Calendar, Google Docs, Gmail, and Picasa, are accessed by a person using Microsoft's Internet Explorer Mobile browser (also known as IE Mobile).

3.     The manner in which Google Applications, such as Google Maps, Google Calendar, Google Docs, Gmail, and Picasa, communicate information to Palm Products.

4.     The manner in which Palm Products communicate information to Google Applications, such as Google Maps, Google Calendar, Google Docs, Gmail, and Picasa.

5.     The manner in which Google Applications, such as Google Maps, Google Calendar, Google Docs, Gmail, and Picasa, store and access data.

# EXHIBIT C

## Hansen, Jeffrey M.

**From:**   Hansen, Jeffrey M.
**Sent:**   Wednesday, April 15, 2009 5:58 PM
**To:**   'Shana Stanton'
**Subject:** Intermec subpoena

As we discussed last week, our list of Google products that we request you start with for your document/information gathering pursuant to Intermec's subpoena is: Gmail, Google Maps, and Google Calendar.

Thanks and have a great week,

Jeff


Jeffrey M. Hansen

Freeborn & Peters LLP

311 South Wacker Drive

Chicago, Illinois 60606

312-360-6379

5/22/2009

# EXHIBIT D

## Hansen, Jeffrey M.

**From:** Shana Stanton [sstanton@google.com]
**Sent:** Monday, April 20, 2009 1:54 PM
**To:** Hansen, Jeffrey M.
**Subject:** Re: Intermec v. Palm Documents

Not a problem- how about 10:30 Thursday?  One of our patent lawyers will be joining us.

On Mon, Apr 20, 2009 at 10:40 AM, Hansen, Jeffrey M. <jhansen@freebornpeters.com> wrote:

> Shana:
>
> We need to reschedule our call today due to an emergency (my apologies).  Please let me know what days work later this week work with your schedule for a call and we will make every effort to be available at times convenient to you.
>
> Thanks,
>
> Jeff Hansen

--
Shana Stanton| Litigation Counsel | Google Inc.

1600 Amphitheatre Parkway | Mountain View, CA 94043

phone 650.253.1037 | fax 650.618.1806

PRIVILEGE AND CONFIDENTIALITY NOTICE:
This message may contain privileged and confidential information.  If you have received this message in error, please notify the sender by return email and then delete the message.  Please do not copy or disclose the contents of this message.  Thank you.

5/22/2009

# EXHIBIT E

## Hansen, Jeffrey M.

**From:** Shana Stanton [sstanton@google.com]
**Sent:** Monday, April 27, 2009 12:35 PM
**To:** Hansen, Jeffrey M.
**Cc:** Weingaertner, Scott
**Subject:** Re: Intermec v. Palm Documents

Hi Jeff,

Sorry about that- I got stuck in a meeting.  Given the scope of the subpoena and the resource implications for us, we have engaged Scott Weingaertner of King & Spalding, cc'd above, to help us work through this with you.  I have asked him to give you a call so that we can move this forward.

Thanks,
Shana

On Mon, Apr 27, 2009 at 10:27 AM, Hansen, Jeffrey M. <jhansen@freebornpeters.com> wrote:

> Shana:
>
> I am running out to another meeting -- please let me know what time this afternoon or tomorrow works for you and we can reschedule the call for that time.
>
> Thanks,
>
> Jeff
>
> ---
>
> **From:** Shana Stanton [mailto:sstanton@google.com]
> **Sent:** Tuesday, April 21, 2009 8:22 PM
>
> **To:** Hansen, Jeffrey M.
> **Subject:** Re: Intermec v. Palm Documents
>
> Actually that will not work after all- how about Monday at 10pst?
>
> On Tue, Apr 21, 2009 at 8:59 AM, Hansen, Jeffrey M. <jhansen@freebornpeters.com> wrote:
>> That would be 12:30 Central time, correct?  If so, that's fine.
>>
>> Jeff Hansen
>>
>> ---
>>
>> **From:** Shana Stanton [mailto:sstanton@google.com]
>> **Sent:** Monday, April 20, 2009 1:54 PM
>>
>> **To:** Hansen, Jeffrey M.
>> **Subject:** Re: Intermec v. Palm Documents
>>
>> Not a problem- how about 10:30 Thursday?  One of our patent lawyers will be joining us.
>>
>> On Mon, Apr 20, 2009 at 10:40 AM, Hansen, Jeffrey M. <jhansen@freebornpeters.com> wrote:

Shana:

We need to reschedule our call today due to an emergency (my apologies).  Please let me know what days work later this week work with your schedule for a call and we will make every effort to be available at times convenient to you.

Thanks,

Jeff Hansen

--
Shana Stanton| Litigation Counsel | Google Inc.

1600 Amphitheatre Parkway | Mountain View, CA 94043

phone 650.253.1037 | fax 650.618.1806

PRIVILEGE AND CONFIDENTIALITY NOTICE:
This message may contain privileged and confidential information.  If you have received this message in error, please notify the sender by return email and then delete the message.  Please do not copy or disclose the contents of this message.  Thank you.


--
Shana Stanton| Litigation Counsel | Google Inc.

1600 Amphitheatre Parkway | Mountain View, CA 94043

phone 650.253.1037 | fax 650.618.1806

PRIVILEGE AND CONFIDENTIALITY NOTICE:
This message may contain privileged and confidential information.  If you have received this message in error, please notify the sender by return email and then delete the message.  Please do not copy or disclose the contents of this message.  Thank you.


--
Shana Stanton| Litigation Counsel | Google Inc.

1600 Amphitheatre Parkway | Mountain View, CA 94043

phone 650.253.1037 | fax 650.618.1806

PRIVILEGE AND CONFIDENTIALITY NOTICE:
This message may contain privileged and confidential information.  If you have received this message in error, please notify the sender by return email and then delete the message.  Please do not copy or disclose the contents of this message.  Thank you.


5/22/2009

# EXHIBIT F

Freeborn & Peters LLP

April 30, 2009

**By E-mail and U.S. Mail**

Scott T. Weingaertner
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003

*Attorneys at Law*

311 South Wacker Drive
Suite 3000
Chicago, Illinois
60606-6677
Tel 312.360.6000

Jeffrey M. Hansen
Partner
Direct 312.360.6379
Fax 312.360.6594
jhansen@
freebornpeters.com

*Chicago*

*Springfield*

Re: Intermec Technologies Corp. Subpoena to Google in *Intermec Technologies Corp. v. Palm, Inc., 07-272-SLR-LPS*

Dear Scott:

Thank you for taking the time to speak with us yesterday by phone. As we discussed during the call, while what follows is a fair summation of the areas of information and testimony we are seeking, we are not waiving our right to seek all information permissible by law pursuant to our subpoena:

A.  Information regarding whether Google products/applications use a form of client-server architecture.

B.  The manner in which the client and server make requests for data from each other and how they respectively respond to such a request (for example, if the client application downloads from the server any executable code, including client-side scripting such as Javascript, AJAX, or Jscript, the manner in which the client application uses and executes that scripting code).

    1.  The manner in which the client side of a Google product/application searches its own data, if at all, prior to requesting data from the server and examples of when and how this occurs.

C.  The manners in which the client (handheld device/Palm device) and server sides of a Google product use and store data (i.e. flat file, database, etc.).

D.  For mobile versions of Google applications, a list of protocols or scripting languages that are supported.

Freeborn & Peters LLP

Scott T. Weingaertner
April 30, 2009
Page 2

> E.    General information regarding the architecture used in Google
> products/applications (for example, identifying the tiers and the
> functions each tier performs).

We understand that you will initially focus on GMail, Google Maps, and Google
Calendar given the logistical issues you stated exist.

We can also state, per your request, that it has not been Intermec's intention to join
Google as a party to this litigation and, per the court's scheduling order, the time for
adding parties has lapsed.

If you have any questions regarding any of this, please do not hesitate to contact me
at 312-360-6379 or at jhansen@freebornpeters.com. As we mentioned during the
call, we are facing a May 18, 2009 discovery deadline and will need to be aware of
Google's response sometime in the next few days in order to avoid having to seek
relief in the appropriate court. We will also need dates and times for a deposition (or
depositions, based upon your statements to us that multiple individuals may be
necessary to discuss Intermec's areas of inquiry) as soon as possible.

Sincerely yours,

Jeffrey M. Hansen

JMH/jlg

1817606v1

# EXHIBIT G

# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, New York 10036-4003
Tel: (212) 556-2100
Fax: (212) 556-2222
www.kslaw.com

Scott T. Weingaertner
Direct Dial:  (212) 556-2227
Direct Fax:  (212)556-2222
sweingaertner@kslaw.com

May 5, 2009

**VIA E-MAIL/CONFIRMATION VIA FIRST CLASS MAIL**

Jeffrey M. Hansen
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, IL
60606-6677

Re:    *Intermec Technologies Corp. v. Palm, Inc., 07-272-SLR-LPS*

Dear Jeff:

Thank you for your letter dated April 30, 2009, relating to the subpoena served by Intermec Technologies Corp. on Google in connection with the above-referenced case.

During our call last week, I described the magnitude and nature of the burden that Intermec's subpoena would, in its current form, impose on Google.  That burden, as we discussed, would be extreme.  On its face it would encompass a discovery effort across many different products, and sectors of Google's organization responsible for those products, and would require technical investigations that would not only be enormously burdensome but also very difficult if not impossible to respond to in short order, and encompassing highly confidential company information.  At the same time, the burden Intermec's subpoena would impose does not appear to be justified by any theory of relevance articulated by Intermec to date.

For that reason, and to help us arrive in a timely fashion at a mutually satisfactory approach, we requested what should be very easy for Intermec provide, namely its theory of how the extraordinarily broad and  wide-ranging documentation and testimony requested of Google would be relevant to Intermec's case in the above-referenced litigation.  We also asked for assurances that Intermec would not seek to join Google as a party to this case.

1055230

Jeffrey M. Hansen
May 5, 2009
Page 2

Google understands and takes seriously its obligations under Rule 45 of the Federal Rules of Civil Procedure. However, our concerns regarding the subpoena's scope remain largely unresolved after our discussion. We set forth below some of our specific concerns and remain open to discussing these issues further.

Our request for Intermec's position on the relevance of the highly burdensome evidence-taking that it seeks included a request for Intermec's:

(1) identification of claims asserted by Intermec in this case;

(2) furnishing of Intermec's position on its construction of the claims, which we understand may have been, or will shortly be, exchanged by Intermec with defendant Palm;

(3) identification of infringement contentions (which we would accept in a fashion redacted to protect any embedded proprietary information).

In addition, we would need an explanation as to why each of the applications Intermec is seeking discovery on is relevant to Intermec's infringement case.

Without at least this requested information, and an identification of how Intermec believes the information it seeks from Google would fit within its theories of infringement by Palm, we are deprived of (i) Intermec's basis for requesting an enormous effort by a third party uninvolved in this litigation, as well as (ii) information that would be helpful to both parties in arriving at an approach best calculated to provide any warranted discovery in a manner that does not impose an undue burden on Google.

Until the requested information is provided, Intermec will not have established the relevance of any of Google's applications to this litigation, much less each of those applications as to which it is seeking third party discovery.

Second, while the document requests in the outstanding subpoena might appear to the uneducated eye to be limited in scope by asking for "documents sufficient to show," the subjects sought to be shown, such as "access" in Request Nos. 1, 2 and 5, and "communicate information" in Request Nos. 3 and 4, are vague and apparently very broad. In view of the complexity of Google's applications, it would be an extreme, and plainly undue, burden for Google to respond to Intermec's requests in their current form, and for all Google applications Intermec has targeted. The additional detail requested in your April 30, 2009 letter may clarify the requests to some extent, but may actually amplify rather than reduce the burden they impose. Moreover, even assuming we limit the scope of the requests to three applications, which Intermec appears to profess an unwillingness to commit to, responding to the requests would still prove to be an overwhelmingly expensive and burdensome task, and likely to implicate a significant number of witnesses.

1055230

Jeffrey M. Hansen
May 5, 2009
Page 3

As mentioned above, we remain willing to discuss this with you and are mindful of the timetable in this case. Therefore, we ask that Intermec furnish us with the information requested during our call last week, and set forth above, so that we can develop a mutually satisfactory approach.

Finally, as to the assurance that Intermec would not seek leave from the Court to join Google as a defendant in this case, or seek leave of the Court to do so, Intermec appears to have stopped short of offering a true assurance. The text in your letter seems to refer to a prior intention but does not make clear that Intermec agrees to not join Google in this case in the future. We therefore ask that Intermec clearly agree in writing not to join, or seek leave to join, Google as a defendant in this case. We would also appreciate Intermec's written indication that it does not intend to sue Google on any of the patents in suit in the above-referenced case.

Please feel free to call me at (212) 556-2227 if you have any questions or concerns.

Very truly yours,

Scott T. Weingaertner

1055230

# EXHIBIT H

**Hansen, Jeffrey M.**

| | |
|---|---|
| **From:** | Hansen, Jeffrey M. |
| **Sent:** | Friday, May 08, 2009 10:37 AM |
| **To:** | 'Weingaertner, Scott' |
| **Cc:** | Becker, David S. |
| **Subject:** | Intermec Subpoena to Google |

Scott:

In the interests of continuing to attempt to resolve our differences regarding Intermec's subpoena to Google, I am proposing the following solution for your consideration --

We are willing to limit initial discovery to the Gmail and Google Maps applications and how those two applications operate on Palm products (including their interactions with cellular networks, the internet, Google servers, and the like). We would reserve our right to seek further information on further applications, if necessary, but would not seek further information on additional applications if the information provided regarding Gmail and Google Maps was sufficient.

Thanks,

Jeff

Jeffrey M. Hansen
Freeborn & Peters LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Phone: 312-360-6379
Fax:    312-360-6594

Confidentiality Notice: This email and its attachments (if any) contain confidential information of the sender which is legally privileged. The information is intended only for the use by the direct addressees of the original sender of this email. If you are not an intended recipient of the original sender (or responsible for delivering the message to such person), you are hereby notified that any review, disclosure, copying, distribution or the taking of any action in reliance of the contents of and attachments to this email is strictly prohibited. We do not waive attorney-client or work product privilege by the transmission of this email. If you have received this email in error, please immediately notify the sender at jhansen@freebornpeters.com and permanently delete any copies of this email (digital or paper) in your possession. Although we have taken steps to ensure that this email and its attachments (if any) are free from any virus, the recipient should, in keeping with good computing practice, also check this email and any attachments for the presence of viruses. This message and any attachments hereto cannot be used for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code.

Freeborn & Peters LLP
http://www.freebornpeters.com

# EXHIBIT I

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INTERMEC TECHNOLOGIES CORP.,      )
a Delaware corporation,           )
                                  )
                Plaintiff,        )
                                  )
        v.                        )     C.A. No. 07-272-SLR
                                  )
PALM, INC.,                       )
a Delaware corporation,           )
                                  )
                Defendant.        )

## DECLARATION OF RAY W. NETTLETON, Ph.D.

I, Ray W. Nettleton, Ph.D., hereby declare as follows:

1.      I am a resident of the State of Colorado, and am over 18 years of age.  I have personal knowledge of the facts stated herein, and would testify to the same if called upon to do so.

2.      I am an Associate Professor Adjunct in the Interdisciplinary Telecommunications Program at the College of Engineering and Applied Science at the University of Colorado, Boulder.   I have a Ph.D. in Electrical Engineering and a M.S. in Electrical Engineering, both from Purdue University.   My background and training include extensive experience with wireless communications systems and devices.  A copy of my C.V. is attached as Exhibit A.  I have been engaged by counsel for Intermec Technologies Corporation ("Intermec") to provide technical assistance and expert testimony regarding various issues in this patent infringement case brought against Palm, Inc. ("Palm").

3.      Among the materials I have reviewed in this matter are three of the patents that I understand to be the basis of some of Intermec's claims of infringement against Palm: U.S.

Patent No. 5, 349,678; U.S. Patent No. 5,568,645; and U.S. Patent No. 5, 987,499 – all of which are entitled "Versatile RF Data Capture System" (the "System Patents").

4.     My review of the record in this matter and further investigation reveals that, among other things, Palm's Accused Devices are capable of downloading software from the internet to operate email and other functions in conjunction with servers that are connected to the internet.  Google provides several applications including Gmail, Google Maps, Google Calendar, Google Docs and Picasa ("Google Apps").  At least Gmail and Google Maps are offered in the form of stand-alone, "downloadable" applications that can be downloaded onto Palm handhelds operating the Microsoft's Windows Mobile Operating System.  Moreover, all of these applications can be accessed by navigating an internet browser such as Palm's Blazer browser or the Mobile version of Microsoft Internet Explorer that is installed on Palm devices operating the Windows OS to access the websites associated with each of the Google Apps.

5.     It is my understanding that Intermec has issued a subpoena to Google in this matter and that the Court has requested that Intermec provide additional information regarding the importance of the information sought from Google to the patent infringement claims in this case.

6.     I have reviewed Intermec's subpoena to Google (the "Subpoena") and understand that Intermec seeks from Google five categories of documents and an individual to testify about the same five categories of information.  The categories of information are as follows:

(1)     The manner in which [Google Apps] are accessed by a person using Palm's Blazer browser.

(2)     The manner in which [Google Apps] are accessed by a person using Microsoft's Internet Explorer Mobile browser.

2

(3)     The manner in which [Google Apps] communicate information to Palm Products.

(4)     The manner in which Palm Products communicate information to [Google Apps].

(5)     The manner in which [Google Apps] store and access data.

Based on my understanding of the record currently developed in this matter and on my personal investigation in this case, it is my opinion that the categories of information identified by Intermec cover subject matter that has a direct bearing on this case. The discovery sought from Google will provide a real-world example of how the accused device functions in the type of system covered by the patent. Accordingly, each of the requested items of information has a direct bearing on the case.

7.     I understand that, among the claims that Intermec has asserted against Palm from the System Patents are independent claims 1 and 8 of the '678 Patent.

8.     Claim 1 of the '678 Patent claims the following:

1.     A data capture system comprising:

a)     a plurality of portable client data collection terminals, each terminal comprising means for collecting data, dynamic addressable storage means and first control means operating on data formatted in a first style;

b)     a server station comprising mass memory means which is larger than said dynamic addressable storage means of a terminal for storing data to be used by said data collection terminals, means responsive to a memory altering request for addressing said mass memory means and second control means operating on data formatted in a second style different from said first style, said data stored in said mass memory means being formatted in said second style; and

c)     communication means for interconnecting said server station and each of said plurality of client data collection terminals;

d)     said first control means of each client data collection terminal comprising means responsive to a need for further data for generating said memory altering request and for

3

actuating said communication means to transmit said generated request identifying its terminal and the particular needed data;

e)      said responsive means of said server station responsive to said generated and transmitted request for addressing and retrieving said needed data from said mass memory means before actuating said communication means to transmit said needed data back to said requesting terminal as identified in said request;

f)      said communication means comprises RF radio means for transmitting said memory altering request from each of said plurality of client data collection terminals to said server station and for transmitting said needed data from said server station back to said requesting terminal.

9.      Among the claimed elements of Claim 1 are the following: (1) data formatted in a first style; (2) mass memory means; (3) second control means operating on data formatted in a second style; and (4) responsive means of said server station responsive to . . . [a] request for addressing and retrieving . . . needed data.

10.     The information requested in category (5) of the Subpoena, which requests information about the manner in which Google Apps store and access data, has a direct bearing on this case and the claim terms identified in paragraph 9 above. The requested information will provide a real-world example of one form of mass memory means and how Google's applications exhibit data formatted in a first style and a second style. Moreover, the information about the Servers that Google uses will provide an example of the control means utilized in that particular implementation.

11.     Claim 8 of the '678 Patent claims the following:

8.      A data capture system comprising:

a)      a plurality of client data collection terminals, each terminal comprising means for collecting data, first control means including processor means for executing a selected one of a plurality of applications programs, and dynamic addressable storage means;

b)      a server station comprising mass memory means which is larger than said dynamic storage means of a terminal for storing application programs to be executed by said processor means of each of said data collection terminals, each application program being partitioned into a root module and at least one overlay module, and a second

4

control means responsive to a memory altering request for addressing said mass memory means; and

c) communication means for transmitting data between said server station and each of said plurality of client data collection terminals;

d) said first control means of each client data collection terminal further comprises means responsive to the execution of an application program by said terminal's processor means for generating a memory altering request and for actuating said communication means to transmit said generated request identifying its terminal and a particular overlay module needed to continue the execution of its application program;

e) said second control means of said server station responsive to said generated and transmitted request for addressing and retrieving from said mass memory means said particular overlay module, before actuating said communication means to transmit said particular overlay module back to said requesting terminal as identified by said request, whereby said processor means of said requesting terminal is able to continue executing said presented executed application program.

12. Among the claimed elements of Claim 8 are the following: (1) mass memory means . . . for storing application programs; (2) application program being partitioned into a root module and at least one overlay module; (3) said generating request identifying its terminal and a particular overlay module; and (4) control means . . . for addressing and retrieving . . . particular overlay module.

13. The information requested in categories (1) through (4) of the Subpoena, which request information about the manner in which users access the Google Apps and about the manner in which information is communicated between handhelds and servers, has a direct bearing on this case and the claim terms identified in paragraph 12 above. The requested information will provide a real-world example of how root and overlay modules could be implemented; how requests from handhelds to servers are handled by the server; and how the information requested is communicated back to the handheld.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Ray W. Nettleton, Ph.D.

# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INTERMEC TECHNOLOGIES CORP.,           )
a Delaware corporation,                )
                                       )
                        Plaintiff,     )
                                       )
            v.                         )    C.A. No. 07-272 (SLR)
                                       )
PALM, INC.,                            )
a Delaware corporation,                )
                                       )
                        Defendant.     )

## STIPULATED PROTECTIVE ORDER

WHEREAS, the parties in this action, plaintiff Intermec Technologies Corp. ("Intermec") and defendant Palm, Inc. ("Palm") believe, and the Court has determined, that good cause exists for entry of this Protective Order; and

WHEREAS, the parties have, through counsel, stipulated to entry of this Protective Order ("Order") pursuant to Fed. R. Civ. P. 26(c) to prevent unnecessary disclosure or dissemination of confidential information of the parties, their affiliates or third-parties; and

WHEREAS, the parties recognize that confidential information is being produced only for use in this civil action;

IT IS HEREBY ORDERED that the following provisions of this Order shall govern the confidential information produced by a party or its affiliates to any other party or by a third-party to any party in the course of this civil action:

1.    The term "Confidential Information" as used in this Order includes all information and tangible things that the designating party reasonably believes constitute or disclose confidential or proprietary information of one of the parties, their affiliates or a third-party. Confidential Information may be contained in discovery information or materials

produced or obtained in this action by or through any means and by or through any person or entity. The Confidential Information contained therein and all copies, recordings, abstracts, excerpts, analyses or other writings that contain, reveal or otherwise disclose such Confidential Information shall also be deemed Confidential Information.

2.     The term "producing party" means the party or person designating documents or information as Confidential Information under this Order.

3.     The term "receiving party" means the party to whom the Confidential Information is disclosed.

4.     The parties will designate as "CONFIDENTIAL" all Confidential Information. The parties may designate as "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" all Confidential Information that satisfies the requirements of paragraph 1 and which comprises the most sensitive information of the parties and their affiliates (including, but not limited to, financial information, strategic plans, business plans, information about licensing negotiations and licensing agreements with third-parties, and non-public patent applications or filings) that, in the opinion of the disclosing party, could cause irreparable harm to its business if disclosed to anyone other than pursuant to the procedures outlined herein.

5.     If any person prints or otherwise creates paper copies or non-paper (*i.e.* diskettes, magnetic, or electronic media) versions of Confidential Information from a producing party that is designated as "Confidential" or "Highly Confidential," such person shall timely mark the Confidential Information with the appropriate "Confidential" or "Highly Confidential" label prior to distributing it. In the event a duplicating process used to make copies of any Confidential Information does not reproduce the original "Confidential" or "Highly

Confidential" marking, all copies of the Confidential Information marked "Confidential" or "Highly Confidential" shall again be marked "Confidential" or "Highly Confidential."

6.      Confidential Information shall be disclosed, disseminated and used by the receiving party only for purposes of this civil action. Except with the prior written consent of the producing party or upon prior order of this Court, Confidential Information shall not be disclosed except in accordance with the terms, conditions, and restrictions of this Order.

7.      This Order will not be disclosed, in any manner, to the jury in this Litigation, or used in any manner or form, direct or indirect, as evidence in any trial or hearing, or referred to in any trial or hearing on the merits of the case, except that it may be disclosed in the event of a hearing involving issues related to the enforcement of any provision of this Order.

8.      The parties may designate material as Confidential Information in the following manner:

(a)      A producing party may designate testimony or information disclosed at a deposition, including exhibits, that contain Confidential Information by notifying all parties in writing, within fifteen (15) days after the producing party's receipt of the final transcript of any such deposition, of the specific pages and lines of the transcript that contain Confidential Information. Each party shall attach, or cause to be attached, to the face of the transcript and each copy thereof in its possession, custody or control, a written statement indicating that the transcript contains Confidential Information or Highly Confidential Information. Accessibility to each transcript (and the information contained therein) of any deposition in its entirety shall be limited to outside counsel of record, the designated in-house counsel, and independent consultants or experts previously disclosed pursuant to paragraphs 10(b)( and 13(c) below only, from the taking of the depositions until twenty (20) days after actual receipt of the final transcript

by the producing party, or until receipt of the notice referred to in this paragraph, whichever occurs sooner. At the expiration of the twenty (20) day period, unless written designations are provided before the expiration of said period, the entire transcript shall be deemed non-confidential.

(b)     Confidential Information contained in any affidavit, brief, memorandum or other paper filed with the Court in this action may be designated as Confidential Information by indicating on the face of such documents that one or more parties consider them to contain Confidential Information.

(c)     Documents produced in discovery that contain Confidential Information shall be designated by conspicuously affixing a legend in the form of "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY."

9.     If necessary, Highly Confidential Information consisting of source code proprietary to the producing party ("proprietary source code") shall be produced under the terms of this Order on an original and two copies of hard drives. No other copies shall be made. Each hard drive shall be an external USB 2.0 model having at least 30 GB of space beyond the space needed for the source code files and a speed of at least 7200 rpm. The proprietary source code shall be organized on each hard drive by software release version. The producing party may designate each hard drive as "Highly Confidential" by placing the following legend on each hard drive:

HIGHLY CONFIDENTIAL PROPRIETARY SOURCE CODE
ATTORNEY'S EYE'S ONLY

Highly Confidential Information designated in this manner shall thereafter be subject to this Order, and use or disclosure of such information so designated shall be restricted as set forth herein.

4

10.   Material designated "CONFIDENTIAL," and any summary, description or report containing such information, may be disclosed only to the following persons:

(a)   the Court, persons employed by the Court, and stenographers transcribing testimony or argument at a hearing, trial or deposition in this action or any appeal therefrom;

(b)   independent consultants and experts who are not current employees of any party in this matter who have been retained by counsel to provide assistance in this action, with disclosure only to the extent necessary to perform such work, subject to the provisions of paragraph 13(c);

(c)   graphics or design services personnel retained by counsel for purposes of preparing demonstrative or other exhibits for depositions, trials or other court pleadings in this action;

(d)   non-technical jury or trial consulting services retained by counsel;

(e)   document imaging and database services personnel retained by counsel, and consultants retained by counsel to set up, maintain and/or operate computer systems, litigation databases or convert data for inclusion in such databases;

(f)   the following in-house counsel for Intermec:

Janis L. Harwell
Senior Vice President & General Counsel
Intermec, Inc.
6001 36th Avenue West
Everett, WA 98203
(425) 265-2403

Paul Maltseff
Legal Counsel, IP
Intermec, Inc.
6001 36th Avenue West
Everett, WA 98203
(425) 348-2600

Phyllis Turner-Brim
Legal Counsel, IP
Intermec, Inc.
6001 36th Avenue West
Everett, WA 98203
(425) 265-2480

(g)    the following in-house counsel for Palm:

Mary E. Doyle
Senior Vice President and General Counsel
Palm, Inc.
950 W. Maude Ave.
Sunnyvale, CA 94085

Robert Booth
Associate General Counsel
Palm, Inc.
950 W. Maude Ave.
Sunnyvale, CA 94085

Douglas Luftman
Associate General Counsel, Intellectual Property
Palm, Inc.
950 W. Maude Ave.
Sunnyvale, CA 94085

(h)    the parties' outside counsel of record in this action as specifically set forth below and any other counsel for a party that appears in this action, and photocopy services personnel retained by counsel, their paralegal assistants, law clerks, stenographic and clerical employees who are assisting in the prosecution, defense and/or appeal of this action:

For Intermec:

FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606-6677

and

6

MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
Chase Manhattan Centre, 18th Floor
1201 North Market Street
Wilmington, Delaware 19899-1347

For Palm:

HELLER EHRMAN LLP
275 Middlefield Road
Menlo Park, California 94025-3506

HELLER EHRMAN LLP
333 Bush Street
San Francisco, California 94104-2878

and

POTTER ANDERSON & CORROON LLP
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801

11.     Materials designated "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES

ONLY," and any summary, description or report containing such information may be disclosed

only to the persons identified in paragraphs 10(a)-(e) and (h) and the following in-house counsel

for each party:

For Intermec:

Paul Maltseff
(See contact information in paragraph 10, above)

For Palm:

Robert Booth
(See contact information in paragraph 10, above)

12.     Proprietary source code designated "Highly Confidential" may only be disclosed

in accordance with the provisions of paragraph 16.

13.    Information designated as Highly Confidential may not be disclosed to any person who, as of the effective date of this protective order, has job responsibilities wherein he or she prepares, revises, or prosecutes patents or patent applications directed to the following subject matter: wireless networking, data capture, and power management (the "Disputed Subject Matter").    Individuals who review Highly Confidential Information shall not engage or participate in the prosecution of patents relating to this subject matter for a period of at least one year following the conclusion of the resolution or trial of this case or of their last review of such information, whichever is later.

14.    Notwithstanding the foregoing, no person who reviews Highly Confidential Information from the Producing Party shall at any time thereafter engage or participate in the prosecution of any patents or patent applications concerning the Disputed Subject Matter that claim priority to any date prior to the date of this Order (including but not limited to continuation, continuation-in-part, or divisional patent applications).

15.    Proprietary source code designated "Highly Confidential" shall be subject to the following additional protective measures to be followed by the receiving party:

(a)    The original hard drive shall be kept in the possession of outside counsel of record in this action identified in Paragraph 10(h).  The backup sets of hard drives shall be kept either in the possession of such outside counsel or an expert qualified under Paragraph 10(b) and 13(c) of this Order.

(b)    All hard drives, when not in use, shall be maintained in a locked cabinet or the like.

(c)    Outside counsel of record in this action identified in Paragraph 10(h) and an expert qualified under Paragraph 10(b) of this Order may use the contents of the hard drive on

8

a computer that is not connected to any network, phone line, wireless network, or any other computer.

(d)     Except as otherwise provided in this paragraph, no back-up copies of the hard drives may be made at any time without the express written consent of the producing party.

(e)     Should one or more hard drives become damaged, the producing party shall exchange the damaged hard drive for an undamaged hard drive.

(f)     The hard drives may be used on a computer having a printer directly attached to the computer (not through any network or server).   However, unless otherwise authorized in writing by the producing party, no more than 25% of the total number of lines of proprietary source code of any software release version may be printed (unless the complete source code from that software release has previously been produced in printed form).   Any printed material shall be labeled as "Highly Confidential Proprietary Source Code – Subject to Protective Order."

(g)     Deposition testimony relating to the proprietary source code, and documents derived from the proprietary source code shall be treated as Highly Confidential material according to the terms of this Order.

(h)     If either party intends to offer any evidence at trial based on the proprietary source code, the Court shall take appropriate measures to preserve the confidentiality of the proprietary source code to the extent reasonably practicable.

16.     (a)     A party may exclude from a deposition any person who is not entitled to have access to Confidential Information or Highly Confidential Information when such information is the subject of examination.

(b)     No Confidential Information or Highly Confidential Information shall be revealed or disclosed, in whole or in part, directly or indirectly, to any individual described in subparagraphs 10(b)-(d) until that individual has been given a copy of this Order and has duly completed and signed an undertaking in the form attached hereto as Exhibit A.  The original of each undertaking shall be retained, until the conclusion of this action including all appeals, by counsel for each party who intends to or does disclose to such individual any Confidential Information or Highly Confidential Information.

(c)     Before individuals under paragraph 10(b) may have access to Confidential Information or Highly Confidential Information, the receiving party must submit to the producing party the signed undertaking as well as the consultant's or expert's curriculum vitae setting forth his or her name, address, qualifications and relevant work experience.   If the producing party does not within five (5) business days from receipt of the undertaking and curriculum vitae object in writing, setting forth the specific grounds for the objection, Confidential Information and Highly Confidential Information may then be disclosed to the consultant or expert.  If timely objection is made, the parties shall attempt in good faith to resolve the disclosure issue.  If the issue cannot be resolved, the producing party has fifteen (15) days from the date it states and objection to bring a motion to preclude the consultant or expert from viewing the producing party's Confidential Information and Highly Confidential Information.   If the producing party does not bring such a timely motion, Confidential Information and Highly Confidential Information may be disclosed to the consultant or expert after the conclusion of the fifteen (15) day period.

(d)     Pursuant to subparagraph 13(c), the disclosure of the identity of a consulting expert will not be a waiver of any privilege that applies to communications with the

10

consultant or the consultant's work product.  Furthermore, the parties agree that by stipulating to the entry of this Protective Order, the parties do not intend to modify in any way the discovery rules applicable to consulting experts.

17.   Designations of Confidential Information and Highly Confidential Information shall constitute a representation that such information has been reviewed by an attorney for the producing party and that there is a valid basis for such designation.  Except, however, that in production of electronically stored information produced through agreed-upon collection and word-search procedures the parties may use electronic search criteria instead of an attorney review.  Confidential Information and Highly Confidential Information shall be maintained by the receiving party under the overall supervision of outside counsel.  The attorneys of record for the parties shall exercise best efforts to ensure that the information and documents governed by this Protective Order are (i) used only for the purposes set forth herein, and (ii) disclosed only to authorized persons.  Moreover, any person in possession of Confidential Information or Highly Confidential Information shall exercise reasonably appropriate care with regard to the storage, custody or use of such Confidential Information or Highly Confidential Information to ensure that the confidential nature of the same is maintained.

18.   The following categories of information shall not be designated as Confidential Information or Highly Confidential Information:  (a) any information that at the time of its disclosure in this action is part of the public domain by reason of prior publication or otherwise; (b) any information that after its disclosure in this action has become part of the public domain by reason of prior publication or otherwise through no act, omission or fault of the receiving party; (c) any information that at the time of its disclosure in this action is rightfully in the possession of the receiving party, its trial counsel or any expert retained by or for the receiving

11

party under no obligations of confidence to any third party with respect to that information; or (d) any information that after its disclosure in this action is rightfully received by the receiving party, its trial counsel or any expert retained by or for the receiving party under no obligations of confidence or otherwise from any third party having the right to make such disclosure.  During the pendency of this action, any disputes as to whether information is Confidential Information or Highly Confidential Information under the terms of this Order shall be resolved according to the procedure set forth in paragraph 16 hereof.

19.    If a party disagrees with the designation of any information as Confidential Information or Highly Confidential Information, such party shall first make its objection known to the producing party and request a change of designation.  The parties shall first try to resolve such dispute in good faith on an informal basis.  If the dispute cannot be resolved, the party challenging the designation may request appropriate relief from the Court no sooner than five (5) days following the service of a written notice of disagreement.  The burden of proving that information has been properly designated as Confidential Information or Highly Confidential Information is on the party making such designation.  Until there is a determination by the Court, the information in issue shall be treated as Confidential Information or Highly Confidential Information and subject to the terms of this Order.  Any failure to object to any material being designated as Confidential Information or Highly Confidential Information shall not be construed as an admission by any non-designating party that the material constitutes or contains a trade secret or other confidential information.

20.    During the course of interviewing a potential witness or preparing for a deposition or testimony, unless otherwise entitled to access under this Protective Order, a fact witness or deponent may be shown Confidential Information or Highly Confidential Information from

another party's documents strictly limited to those documents that on their face reveal that they were authored, sent or received by the witness or deponent outside the context of this litigation. This shall not preclude a producing party from showing documents that it has produced to its own witnesses and deponents, regardless of whether the producing party has designated the document(s) that it produced as Confidential Information or Highly Confidential Information and regardless of whether such person was the author or a recipient of the document.

21.     At the deposition of a third party or current or former employee of a producing party, such third-party or current or former employee of a producing party may be shown documents designated as Confidential Information or Highly Confidential Information if the document was authored by, sent or received by that third-party or current or former employee, or provided that the producing party consents to such disclosure.

22.     Any person receiving Confidential Information or Highly Confidential Information shall not disclose such information to any person who is not entitled to receive such information under this Order.  If Confidential Information or Highly Confidential Information is disclosed to any person not entitled to receive disclosure of such information under this Order, the person responsible for the disclosure will inform counsel for the producing party and, without prejudice to other rights and remedies of any party, make a reasonable good faith effort to retrieve such material and to prevent further disclosure of it by the person who received such information.

23.     Written material constituting or revealing Confidential Information or Highly Confidential Information, when filed with the Court in this action for any reason, shall be filed in accordance with any established court procedure for filing documents under seal.  All documents and chamber copies containing Confidential information or Attorneys Eyes Only information

13

which are submitted to the Court shall be filed with the Court in sealed envelopes or other appropriate sealed containers pursuant to Fed. R. Civ. P. 26(c)(8) and L.R. 5.1.3. A photocopy of the certificate of service shall be attached to the back of the envelope or container. On the outside of the envelopes, the case number, title of this action, and title of the document shall be attached, along with a statement substantially in the following form:

CONFIDENTIAL –<br>
FILED UNDER SEAL

24.    The Clerk of the Court is directed to place and maintain under seal in accordance with this Order any such pleading or other document filed with or delivered to this Court pursuant to Paragraph 20 or any other provision hereof.

25.    Nothing herein shall prevent disclosure beyond the terms of this Order if the party producing Confidential Information or Highly Confidential Information consents in writing to such disclosure, or if the Court, after notice to all affected parties, orders or permits such disclosure.

26.    The inadvertent production in discovery of any privileged or otherwise protected or exempted information, as well as the inadvertent production in discovery of information without an appropriate designation of confidentiality, shall not be deemed a waiver or impairment of any claim of privilege or protection, including but not limited to the attorney-client privilege, the protection afforded to work-product materials or the subject matter thereof, or the confidential nature of any such information, provided that the producing party shall promptly provide notice to the receiving party in writing when inadvertent production is discovered. Upon receiving written notice from the producing party that privileged information or work-product material or otherwise protected or exempted information has been inadvertently produced, such information shall be returned to counsel for the producing party and the receiving

14

party shall not use such information for any purpose except application to the Court until further Order of the Court. In response to an application to the Court by the receiving party to compel production of inadvertently-produced document, the producing party may submit the documents or testimony at issue to the Court for *in camera* inspection.

27. Both parties anticipate producing significant amounts of electronically stored information (ESI) in this matter and, due to the volume of ESI maintained by each, anticipate that such productions will be accomplished through agreed-upon collection and word-search procedures. In the event that the production of ESI results in the inadvertent production of any privileged or otherwise protected or exempted information or the inadvertent production of materials without an appropriate designation of confidentiality, such production shall not be deemed a waiver or impairment of any claim of privilege or protection, including but not limited to the attorney-client privilege, the protection afforded to work-product materials or the subject matter thereof, or the confidential nature of any such information, provided that the producing party, upon learning of the inadvertent production, shall promptly provide notice to the receiving party in writing when inadvertent production is discovered. Upon receiving written notice from the producing party that privileged information or work-product material has been inadvertently produced, such ESI shall be returned to the producing party and/or destroyed as follows:

(a) The receiving party shall immediately and permanently delete any and all copies of the inadvertently produced ESI, along with associated data-load files, from any and all network storage devices, drives, databases, discs, and/or other electronic media in its possession, custody, or control;

(b)   The receiving party shall, as soon as practicable, confirm, in writing to the producing party, that the inadvertently produced ESI has been permanently deleted as described in the preceding paragraph (a);

(c)   The receiving party shall return all hard drives, CDs, DVDs, or other electronic media that the ESI was produced on to the producing party and, in return, if the receiving party requests, the producing party will provide new versions of said electronic media that exclude the inadvertently produced information;

(d)   The receiving party shall, as soon as practicable, destroy all hard copies of inadvertently-produced materials and confirm destruction in writing; and

(e)   The receiving party shall, as soon as practicable, destroy any other documentation in its possession, custody, or control whether in hard-copy or electronic form that refers to, reflects, or otherwise relates to any of the above-listed documents or ESI.  This destruction shall include destruction of any notes on the documents themselves, as well as all notes or other documentation reflecting the mental impressions of any of receiving party's counsel regarding the inadvertently-produced documents or ESI.  In response to an application to the Court by the receiving party to compel re-production of inadvertently-produced ESI, the producing party may submit the documents or testimony at issue to the Court for *in camera* inspection.

28.   This Order shall not be deemed a waiver of:

(a)   any party's right to object to any discovery requests on any ground;

(b)   any party's right to seek an order compelling discovery with respect to any discovery request;

(c)   any party's right in any proceeding or action herein to object to the admission of any evidence on any ground;

16

(d)     any party's right to use and disclose its own documents and its own Confidential Information designated "Confidential" and/or "Highly Confidential" in its sole and complete discretion; or

(e)     the status of any Confidential Information or Highly Confidential Information as a trade secret.

29.     Nothing herein shall prevent any party or non-party from seeking additional relief from the Court not specified in this Order, or from applying to the Court for further or additional Protective Orders.

30.     Third-parties who produce information in this Action may avail themselves of the provisions of this Protective Order, and discovery materials produced by third parties shall be treated by the parties in conformance with this Protective Order.

31.     By entering this Order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case.  Any person or party subject to this Order that may be subject to a motion to disclose another party's information designated Confidential Information or Highly Confidential Information pursuant to this Order shall promptly notify that party of the motion so that it may have an opportunity to appear and be heard on whether that information should be disclosed.

32.     In the event that any of the parties (a) is subpoenaed in another action, (b) is served with a demand in another action to which it is a party, or (c) is served with any other legal process by a person not a party to this litigation, and is requested to produce or otherwise disclose discovery material that is designated as Confidential Information or Highly Confidential Information by another party, the party subpoenaed or served shall give prompt written notice to

17

the producing party. If the producing party objects to the production of the Confidential Information or Highly Confidential Information within five business days of receiving such notice, then the party subpoenaed or served shall serve written objections to the to production of the Confidential Information or Highly Confidential Information based on the existence of this order and the producing party may choose to assert its rights in the other proceedings. If the person seeking access to the Confidential Information or Highly Confidential Information takes action against the party covered by this Order to enforce such a subpoena, demand or other legal process, it shall respond by setting forth the existence of this Order. Nothing in this Order shall be construed as precluding production of Confidential Information or Highly Confidential Information covered by this Order in response to a lawful court order.

33. (a) Within sixty (60) days after filing of the final order in this action, all Confidential Information and Highly Confidential Information shall be destroyed by all receiving parties or shall be returned to the producing party. If any receiving party destroys any such Confidential Information or Highly Confidential Information, that party shall send a letter to the producing party confirming the same.

(b) Notwithstanding the foregoing, outside counsel of record for each party may maintain in its files one copy of each document filed with the Court containing Confidential Information or Highly Confidential Information, and a copy of all depositions (and exhibits) and any notes or memoranda relating thereto. All such material shall remain subject to the terms of this Order.

(c) Within sixty (60) days of the filing of this final order in this action, the produced original and back-up hard drives shall be reformatted and returned to the producing party along with a certification that the hard drives returned were those that were produced.

18

34.   This Order shall remain in full force and effect until modified, superseded, or terminated by agreement of the parties or by an Order of the Court.

AGREED TO BY:

Dated: _____

*/s/ Rodger D. Smith II*

_____
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899
  Attorneys for Plaintiff
  Intermec Technologies Corp.

Dated: _____

*/s/ Richard L. Horwitz*

_____
Richard L. Horwitz (#2246)
POTTER, ANDERSON & CORROON LLP
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801
  Attorneys for Defendant
  Palm Inc.

SO ORDERED this ____ day of _____, 2008

_____
United States District Judge

1642897

19

# EXHIBIT A

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| INTERMEC TECHNOLOGIES CORP.,<br>a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 07-272-SLR |
| PALM, INC.,<br>a Delaware corporation, | ) ) ) | |
| Defendant. | ) ) | |

**UNDERTAKING PURSUANT TO PROTECTIVE ORDER**

   I have read the Protective Order concerning the confidentiality of information in the above-captioned litigation. I understand that the Protective Order is a Court order designed to preserve the confidentiality of certain confidential information. I also understand that the Protective Order restricts the use, disclosure and retention of such confidential information and also requires the safeguarding and return of documents and other materials containing confidential information. I further understand that the Protective Order in this matter includes protection of certain documents on an "Attorneys' Eyes Only" basis.

   I have fully reviewed and agree to comply with all provisions of the Protective Order with respect to any information designated confidential that is furnished to me, including the provisions regarding preserving confidentiality and those regarding protecting documents on an "Attorneys' Eyes Only" basis. I further hereby submit myself to the jurisdiction of the Court for purposes of enforcement of the provisions of the Protective Order.

Dated: _____

_____
Signature

_____
Name

_____
Address