1 | Richard J. Mooney, Esq. (SBN: 176486)
      rmooney@linerlaw.com
2 | Liner Grode Stein Yankelevitz
    Sunshine Regenstreif & Taylor LLP
3 | 199 Fremont Street, 20th Floor
    San Francisco, CA 94105-2255
4 | Telephone: (415) 489-7700

5 | Jacob D. Koering, Esq. (admitted *pro hac vice*)
      jkoering@freebornpeters.com
6 | Freeborn & Peters LLP
    311 South Wacker Drive #3000
7 | Chicago, IL 60606
    Telephone: (312) 360-6000

8 |

   | Attorneys for Intermec Technologies Corp.
9 |

10 |               **UNITED STATES DISTRICT COURT FOR**

11 |             **THE NORTHERN DISTRICT OF CALIFORNIA**

12 |

13 | **In re Miscellaneous Action to Enforce**        ) | Case No. C 09-80098 MISC WHA
     **Compliance with Subpoena**                     )
14 |                                                   )
     Underlying case:                                 ) | Underlying Case No.:
15 |                                                   ) | C.A. No. 07-272-SLR
     Intermec Technologies Corp., a Delaware          ) | (Pending in the District of Delaware)
16 | corporation,                                      )
                                                       ) | **Intermec Response to**
17 |              Plaintiff,                            ) | **Order To Show Cause re Sanctions**
                                                       )
18 |                  v.                                ) | Date: No hearing set
                                                       ) | Time: No hearing set
19 | Palm, Inc., a Delaware Corporation,               ) | Crtrm: No hearing set
                                                       )
20 |              Defendant.                            )
                                                       )
21 |                                                   )
                                                       )
22 |                                                   )
                                                       )
23 | _____)
                                                       )
24 |
25 |
26 |
27 |
28 |

*Intermec Technologies Corp. v. Palm, Inc.*, Case No. C 09-80098 WHA (Underlying Case No. 07-272-SLR (D. Del.))
Intermec Response to Order To Show Cause re Sanctions

0030079

Dockets.Justia.com

## I.      Introduction

This Court has ordered Plaintiff Intermec Technologies Corp. ("Intermec") to show cause why it should not be sanctioned and required to pay respondent Google, Inc.'s ("Google") expenses related to a subpoena issued to Google, which this Court quashed in an Order dated May 15, 2009.  Intermec respectfully submits that, based on the facts and law outlined below, sanctions would be inappropriate here, and Intermec should not be required to pay Google's fees.  *First,* Intermec made every effort to negotiate in good faith with Google regarding the scope of its response, with Intermec's primary goal being elimination of any undue burden on Google.  More importantly, Intermec believed, based on the correspondence exchanged between counsel, that both parties viewed such negotiations as productive and likely to lead to a fair negotiated resolution on the issue.  This fact, more so than any other associated with the subpoena, counsels strongly against sanctioning Intermec.  *Second*, Intermec does not believe that its subpoena, as drafted, was overbroad or imposed any undue burden on Google.  To the extent Google and the Court disagree, Intermec believes it is – at worst – guilty of allowing an incorrect impression of its intentions to be created.  Intermec never intended to impose any burden on Google beyond the absolute minimum required to produce "documents sufficient to show" how certain of its applications functioned – as opposed to the much broader and more onerous "all-documents-related" standard employed in many subpoenas – and designate a witness to sit for a brief deposition.  In sum, Intermec believes it acted reasonably in its pursuit of discovery to which it was entitled under FED. R. CIV. P. 45, and that it was actively cooperating with Google to outline fair parameters for Google's response. Ultimately, the parties could not reach an agreement, and the Court determined that the subpoena should be quashed, but that alone should not result in the imposition of sanctions given Intermec's good-faith efforts.

1

## II.   Argument

### A.   Intermec Made Every Effort to Minimize Google's Burden of Compliance.

As stated above, one of the principal reasons that Intermec did not feel that its subpoena was overbroad or unduly burdensome was that its counsel had engaged in good-faith discussions with both in-house and outside counsel for Google, and that, by all objective indications, progress was being made towards compliance on the part of Google that would have been satisfactory to both parties.  At a minimum, the history of correspondence between counsel on this issue confirms that Intermec was a good-faith participant in this process, simply seeking a reasonable quantity of discoverable information in a manner that placed no unnecessary burden on Google, and never attempted to strong-arm Google or take an uncompromising position on its compliance.  The good faith evidenced by these negotiations should bear significantly on the question of whether Intermec should be required to pay Google's attorneys' fees in this action as a sanction.

*CIGNA  Ins. Co. v. Millers Mut. Fire Ins. Co.* is instructive.  40 F.3d 110, 112 (5th Cir. 1994).  There, as here, the court considered the assessment of sanctions against a party seeking discovery from a third party in a different jurisdiction than that in which the underlying case was pending, based on charges that the party seeking discovery had imposed an undue burden on the respondent. *Id.* at 111.  The Fifth Circuit determined that sanctions were inappropriate given the effort that had been made to arrive at an agreement on the scope of the subpoena, and reversed the district court:

> Upon completion of our review, we conclude that the erroneously excluded affidavits present adequate proof that CIGNA and Stewart engaged in sufficient good faith efforts to negotiate reasonable parameters on the subpoena duces tecum to preclude sanctions.  The award of same was an abuse of discretion and the sanctions are vacated.

2

*Intermec Technologies Corp. v. Palm, Inc.,* Case No. C 09-80098 WHA (Underlying Case No. 07-272-SLR (D. Del.))
Intermec Response to Order To Show Cause re Sanctions

0030079

1  *Id.* at 112.  *See also IP Co., LLC v. Cellnet Tech., Inc.*, No. C08-80126 MISC MMC (BZ), 2008

2  WL 3876481, at *5 (N.D. Cal. Aug. 18, 2008) (denying leave to file motion for sanctions under

3  Fed. R. Civ. P. 37(a)(5) where filing of motion to compel was "substantially justified"); *Cf. High*

4  *Tech Medical Instrumentation, Inc. v. New Image Indus., Inc.* 161 F.R.D. 86, 88 (9th Cir. 1995)

5
6  (awarding sanctions where requesting party acted unreasonably in "refusing to alter the scope of

7  the subpoena," which had requested, according to the court "virtually every piece of paper [the

8  respondent] had ever generated with regard to [the] plaintiff" ).

9          The Declaration of Jeffrey M. Hansen In Support Of Intermec Response to Order to

10  Show Cause Regarding Sanctions (the "Hansen Declaration"), submitted concurrently herewith,

11  outlines the history of negotiations with respect to the subpoena issued to Google, and confirms

12  that Intermec made honest efforts to limit the scope of the subpoena and eliminate inconvenience to

13  Google, such that sanctions would be inappropriate.  Motion practice was by no means a foregone

14  conclusion during discussions between counsel, and it was not until the last minute that discussions

15
16  reached the point where each party felt compelled to seek the Court's assistance.

17          Intermec's efforts to accommodate Google began literally at the earliest possible

18  moment in this process.  As noted in Intermec's Motion to Compel, the subpoena at issue here was

19  actually re-issued to Google after Intermec had served an earlier subpoena out of the District of

20  Delaware – Google's state of incorporation and the state where the underlying matter is pending –

21
22  with a shorter compliance date to accommodate the then-pending discovery deadline in the

23  underlying matter.  Hansen Decl. ¶ 7.  Knowing that a re-issued version of the subpoena was being

24  prepared, Google requested that Intermec issue it out of this Court, as opposed to Delaware.

25  Google represented that the documents at issue were located in this jurisdiction, and Intermec was

26  willing to forego its chosen forum in order to help facilitate Google's compliance.  *Id.* at ¶ 7.

27
28

*Intermec Technologies Corp. v. Palm, Inc.*, Case No. C 09-80098 WHA (Underlying Case No. 07-272-SLR (D. Del.))
Intermec Response to Order To Show Cause re Sanctions

0030079

1    In practice, Intermec's acquiescence to Google's choice of this venue proved to be

2  much more than a symbolic gesture.  When the dispute over the subpoena did ripen to the point

3  where the parties sought the Court's assistance in resolving it, Intermec was forced to engage local

4  counsel in this District to help prepare its pleadings in this Court.  By contrast, Intermec already

5  has counsel on the underlying matter in Delaware – the District out of which the subpoena to

6  Google had originally been issued.  If Intermec had not agreed to Google's request and instead

7  required the subpoena to be answered in Delaware as originally contemplated, it could have saved

8  the expense of retaining local counsel in California and getting it up to speed on the underlying

9  dispute to the extent necessary to assist with the Motion to Compel.  And, of course, Intermec's

10  counsel had to travel to this District to argue the Motion, which would not have been necessary had

11  the subpoena remained in Delaware.  The fact that Intermec would agree to expose itself to these

12  additional costs confirms that it never expected to have to litigate this issue, and that a spirit of

13  cooperation was prevalent from the most nascent stages of this process.

14    Beyond the act of allowing for this dispute to be brought in this venue, the history of

15  negotiations between counsel for the parties, as described in the Hansen Declaration, confirms that

16  each side was actively engaged in attempting to define a reasonable set of parameters for Google's

17  compliance, which would provide Intermec with the information it sought in a timely manner,

18  while not subjecting Google to any undue inconvenience.  And, when considering the history of

19  negotiations, it is important to note that the first subpoena was issued to Google in Delaware on

20  approximately March 2, 2009.  Hansen Decl. ¶ 7.  So Google had been subject to the subpoena for

21  more than 60 days before the parties filed their respective motions.  On its face, this passage of

22  time evidences good faith, and confirms that neither party viewed the other's position as

23  intractable, such that further discussions could not possibly have led to a negotiated result.

0030079

Intermec emphasized that its subpoena was specifically drafted to only seek "documents sufficient to show" how particular functions operated on Palm's devices, as opposed to "all documents related" to a particular topic. Hansen Decl. ¶ 3. Intermec believed it to be possible that a single document could be responsive to a particular request, and that, assuming that the document did, in fact, address the area of inquiry, no further production would be necessary. Hansen Decl. ¶¶ 3, 14. Intermec also offered to have Google limit the scope of its initial inquiry to information on the operation of three specific applications – Gmail, Google Maps, and Google Calendar – as opposed to the five examples of applications described in the subpoena. Hansen Decl. ¶ 11. If this initial review provided the information requested, no further searching would have been necessary or sought from Google. *Id.* at ¶ 11. And, in a final effort to help ease Google's burden of production, Intermec offered to limit the range of applications to *two*. Hansen Decl. ¶¶ 15, 17. Such limited requests and efforts to agree to further restrictions are a far cry from the conduct that this Court has previously found to warrant sanctions with respect to the issuance of a subpoena. *New Image Indus., Inc.*, 161 F.R.D. at 87 (respondent refused to agree to limit scope of facially overbroad subpoena).

Intermec also made clear that it was only seeking documents and testimony regarding how certain Google applications operate at a broad, general level, and that it was not at all interested in receiving documents that Google believed to contain confidential, proprietary, or trade-secret information. Hansen Decl. ¶¶ 8, 14. In fact, Intermec emphasized that, if Google believed that sensitive documents were responsive to the subpoena, the parties should discuss the issue further, because those documents were almost certainly not the documents that Intermec was seeking. Hansen Decl. ¶ 14. Intermec fully believed that the documents responsive to its subpoena could be publicly available, or at least contain such benign, generalized information that Google would not object to them being made public Hansen Decl. ¶ 14. And, notwithstanding that, at

0030079

1    Google's request, Intermec provided a copy of the Stipulated Protective Order in the underlying

2    matter and invited Google to produce subject to it.  Hansen Decl. ¶ 9.  The Stipulated Protective

3    Order represents the strictest protections that any litigant could reasonably offer to a third-party

4    respondent.  Indeed, both Intermec and Palm – two entities that certainly have their own interests in

5    maintaining the confidentiality of their proprietary technological information – have exchanged

6    highly sensitive documentation pursuant to the Protective Order.    *Id.* at ¶ 9.

7

8           Google, for its part, did assert that it believed Intermec's subpoena to be

9    unreasonable, but the only specifics that it provided in support of that conclusion was that multiple

10   people work on each Google application in multiple countries.  Hansen Decl. ¶ 19.  Intermec was

11   eager to discuss that issue further to determine if it could provide more information that might help

12   to focus the inquiry, but Google, even when asked, did not provide any additional detail about its

13   claimed difficulty.  Hansen Decl. ¶ 19.  If Intermec could have, on its own, narrowed its requests

14   any further to help minimize the burden on Google, it certainly would have done so.  But it did not

15   have enough knowledge about Google's internal structure or operations to provide useful direction

16   to Google's counsel.

17

18          Intermec simply wanted to open a dialogue with Google to help facilitate the

19   location and production of the information that Intermec was seeking.  After multiple conversations

20   and negotiations that Intermec believed were showing progress regarding Google's response to the

21   subpoena, Google abruptly changed course, and did not seem to have any further interest in having

22   a dialogue absent Intermec agreeing to provide it with a covenant not to sue.  Hansen Decl. ¶¶ 16,

23   17, 19.

24

25          Indeed, in retrospect, it appears that it was Google's unreasonable insistence on

26   receiving assurances that Intermec would not sue it for patent infringement that derailed the

27   negotiations.  Though Google offered a curious denial on this point at the May 15 Hearing, the

28

*Intermec Technologies Corp. v. Palm, Inc.*, Case No. C 09-80098 WHA (Underlying Case No. 07-272-SLR (D. Del.))
Intermec Response to Order To Show Cause re Sanctions

0030079

1  history of correspondence speaks for itself.  First, on April 30, Intermec's counsel, in response to

2  Google's request, confirmed that Intermec had neither the intention nor the ability to sue Google:

3          We can also state, per your request, that it has not been Intermec's
4          intention to join Google as a party to this litigation and, per the
        court's scheduling order, the time for adding parties has lapsed.
5
6  (April 30 Letter from Jeffrey M. Hansen to Scott T. Weingaertner, attached to Hansen Declaration

7  as Exhibit F).  Despite a statement that adding a new party would be functionally impossible,

8  Google still demanded additional assurances:

9          Finally, as to the assurances that Intermec would not seek leave from
        the Court to join Google as a Defendant in this case, or seek leave of
10          the Court to do so, Intermec appears to have stopped short of offering
        a true assurance.  The text in your letter seems to refer to a prior
11          intention but does not make clear that Intermec agrees to not join
        Google in this case in the future.  We therefore ask that Intermec
12          clearly agree in writing not to join, or seek leave to join, Google as a
        defendant in this case.  We would also appreciate Intermec's written
13          indication that it does not intend to sue Google on any of the patents
        in the above-referenced case.
14
15  (May 5 Letter from Scott T. Weingaertner to Jeffrey M. Hansen, attached to Hansen Declaration as

16  Exhibit G).  Google's demand regarding Intermec's intention to join it as a party in the underlying

17  case *and* not sue it on any of the patents in suit, was the last in a series of prerequisites in the May 5

18  Letter which Google indicated would need to be satisfied before it complied with the subpoena.  At

19
20  the hearing, Google's counsel resisted the characterization of its demand as conditioning its

21  compliance on receiving a covenant not to sue, but the correspondence plainly suggests otherwise.

22  Google had no right to such assurances, and this contributed significantly to the breakdown in

23  negotiations concerning the subpoena that eventually led to motion practice.  Hansen Decl. ¶ 17.

24
        The parties were unable to reach a negotiated resolution regarding the subpoena
25
26  issued to Google in this District, which prompted each to file a motion, and the Court ordered that

27  Intermec's subpoena was to be quashed.   But prior to that time, Intermec had made every

28  reasonable effort to provide whatever assistance it could to Google, in an effort to make locating

0030079

1  and providing the requested information as easy as possible.  This is not a level of conduct that

2  warrants the imposition of sanctions.  *See CIGNA*, 40 F.3d at 112 (vacating award of sanctions

3  based on showing of good-faith efforts to limit the scope of a third-party subpoena).

**B.      Intermec Believed That Its Subpoena Was Reasonable.**

The efforts that Intermec describes above were not empty gestures, engaged in

solely for the sake of appearances.  Intermec believed that the subpoena that it issued to Google

was reasonable in scope under the Federal Rules of Civil Procedure, and was not designed to

impose any undue burden.  It genuinely attempted to convey that belief to Google.  Intermec made

every effort to impress upon Google that it was only interested in a narrow set of documents that

would be "sufficient to show" the information sought and no more, as clearly stated in the

subpoena.

Intermec believes that the documents it requested from Google were within the

scope of permissible discovery, as set forth in FED. R. CIV. P. 45.  In support of that contention,

Intermec submits the Declaration of Ray W. Nettleton, Ph.D., who describes the nature of the

functionality about which Intermec requested information from Google, and the relationship of that

information to the underlying claims of infringement against Palm.  Broadly, information

concerning the interaction of Google's software applications with Palm's handheld devices

provides a real-world example of how Palm's accused device functions in the type of system

covered by the patent.  (*See* Declaration of Ray W. Nettleton, Ph.D. attached as Exhibit I to the

Hansen Declaration).

It is difficult to accept Google's complaints regarding its lack of understanding of

the relevance of the information sought in Intermec's subpoena, as (1) Intermec had a detailed

telephone conference with Google's in-house counsel regarding the relevance of the documents to

the underlying litigation; (2) Intermec provided all documents requested by Google's counsel; (3)

0030079

1   the parties had another call scheduled to further discuss the subject, which was cancelled by

2   Google; and (4) Google's outside counsel never took Intermec up on its counsel's repeated offers

3   to have more detailed discussions regarding the information sought by Intermec and how it related

4   to its case against Palm.  Hansen Decl. ¶¶ 9, 10, 12, 16.  Instead, after a month and a half of

5   discussions, with a discovery deadline looming of which Google was aware, Google wished to

6   press the "reset" button on its discussions with Intermec – a step Intermec did not have the time to

7   take – and forced its hand to file its Motion to Compel.  Hansen Decl. ¶¶ 13, 14, 16, 17.

8

9             Finally, Intermec did not plan on, or expect to, subpoena Google.  It believed that

10   the information sought could have been provided by Palm.  Hansen Decl. ¶ 20.  But Palm's

11   disclaimer of any knowledge on this subject necessitated third-party discovery, and, while the acts

12   of other parties in other courts are not binding on this particular dispute, Intermec does note that it

13   issued subpoenas that were nearly identical to that at issue here to a number of large technology

14   companies – including Microsoft, Verizon, Sprint Nextel, and AT&T – and all have complied with

15   the subpoenas, at least as modified in negotiations between counsel, or are in the process of doing

16   so.  Hansen Decl. ¶¶ 4, 20.  And, of note, the document productions from those that have already

17   complied have been minimal – with most averaging one hundred pages.  Hansen Decl. ¶ 4.  This is

18   unsurprising given the subpoenas' express limitation to "documents sufficient to show" how the

19   requested functionality operates.  Again, Intermec does not offer this as proof that Google should

20   have been ordered to produce, but, rather, submits it as evidence of its good-faith belief that the

21   subpoena it issued, when accompanied by earnest discussions between counsel, could lead to the

22   timely production of the information sought without placing an undue burden on the respondent.

23   Intermec genuinely believed it was on this path with Google, and, while the breakdown in

24   negotiations was unfortunate, it does not warrant the imposition of sanctions here.

25

26

27

28

0030079

1  **III.     Conclusion**

2          For all of the reasons noted above, and as supported by the Declarations submitted

3  herewith, Intermec respectfully submits that it should not be sanctioned and ordered to pay

4  Google's attorneys' fees in connection with the issuance of a subpoena to Google.

5

6

7  Dated:  May 22, 2009                          LINER GRODE STEIN YANKELEVITZ
                                                 SUNSHINE REGENSTREIF & TAYLOR LLP
8

9                                                By: _____

10                                               Richard J. Mooney
                                                 Attorneys for Intermec Technologies Corp.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Intermec Technologies Corp. v. Palm, Inc.,* Case No. C 09-80098 WHA (Underlying Case No. 07-272-SLR (D. Del.))
Intermec Response to Order To Show Cause re Sanctions

0030079