

1  SCOTT T. WEINGAERTNER (*pro hac vice*)
   (sweingaertner@kslaw.com)
2  KING & SPALDING LLP
   1185 Avenue of the Americas
3  New York, NY 10036-4003
   Telephone: (212) 556-2100
4  Facsimile: (212) 556-2222

5  PAUL J. ANDRE, Bar No. 196585
   (pandre@kslaw.com)
6  LISA KOBIALKA, Bar No. 191404
   (lkobialka@kslaw.com)
7  KING & SPALDING LLP
   333 Twin Dolphin Drive, Suite 400
8  Redwood Shores, CA 94065
   Telephone:   (650) 590-0700
9  Facsimile:    (650) 590-1900

10 Attorneys for Nonparty
   GOOGLE INC.

11

12                **UNITED STATES DISTRICT COURT**

13            **NORTHERN DISTRICT OF CALIFORNIA**

14

15                 **SAN FRANCISCO DIVISION**

16 INTERMEC TECHNOLOGIES CORP.,      CASE NO. 09-80097 MISC WHA
   a Delaware Corporation,
17                         Related to:
18      Plaintiff,
                        CASE NO. 09-80098 MISC WHA
19        v.

20 PALM, INC., a Delaware Corporation,      **NONPARTY GOOGLE INC.'S**
                                  **OPPOSITION TO INTERMEC'S**
21                                  **RESPONSE TO ORDER TO SHOW**
       Defendant.                      **CAUSE RE SANCTIONS**
22

23

24

25

26

27

28

   GOOGLE'S OPPOSITION TO INTERMEC'S              CASE NO. 09-80097 MISC WHA
   RESPONSE TO ORDER TO SHOW CAUSE

Dockets.Justia.com

1

## TABLE OF CONTENTS

2  I.   Introduction ............................................................................................................ 1

3  II.  Factual Background................................................................................................. 1

4  III. Argument................................................................................................................ 3

5       A.   An Award of Sanctions is Appropriate Under Applicable Law...................... 3

6       B.   Intermec's "Belief in the Reasonableness" of its Subpoena is Neither
7            Credible Nor Relevant..................................................................................... 4

8            1.   Intermec's Alleged Subjective Belief in the Subpoena's
                  Reasonableness is Irrelevant and Lacks Credibility in View of the
9                 Subpoena's Objective Unreasonableness ............................................... 5

10           2.   The "Documents Sufficient To Show" Language Did Not Mitigate
11                Google's Burden Under the Subpoena.................................................... 6

12           3.   Intermec Failed to Provide a Theory of Relevance that Would Have
                  Facilitated Google's Compliance with the Subpoena ........................... 6
13
14           4.   Intermec's Citation of "Nearly Identical Subpoenas" is Misleading:
                  The Subpoenas are Not Identical and the Parties May Not Have
15                Finished their Obligations Under Their Respective Subpoenas............ 7

16      C.   Intermec's "Good Faith Negotiation" Argument is Not Supported by
             Intermec's Actual Course of Dealing................................................................ 8
17
18           1.   Intermec Refused Google's Compromises Towards Limiting the
                  Subpoena's Scope ................................................................................. 8

19           2.   Intermec Never Actually Limited the Subpoena's Scope ..................... 8

20           3.   Google Never Conditioned Compliance Upon Receiving a
                  Covenant Not to Sue ............................................................................. 9
21
22           4.   Intermec's Activities Post-Issuance of the Protective Order
                  Undermine Intermec's Professed "Good Faith" Negotiation
23                Argument.............................................................................................. 10

24 IV.  Conclusion............................................................................................................ 10

25

26

27

28

i

1

## TABLE OF AUTHORITIES

2
CASES

3
4
*High Tech Medical Instrumentation, Inc. v. New Images Indus., Inc.,*
   161 F.R.D. 86(N.D. Cal. 1995) ................................................................................................. 4

5
*Micro Motion Inc. v. Kane Steel Co.,*
   894 F.2d 1318 (Fed. Cir. 1990) ............................................................................................... 5
6

7
OTHER AUTHORITIES

8
Federal Rules of Civil Procedure 35(A)......................................................................................... 3

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOOGLE'S OPPOSITION TO INTERMEC'S                          CASE NO. 09-80097 MISC WHA
RESPONSE TO ORDER TO SHOW CAUSE

1

## I.    Introduction

2      Nonparty Google Inc. ("Google") opposes Intermec Technologies Corp.'s ("Intermec's")

3  *Response to Order to Show Cause re Sanctions* ("Response") relating to Intermec's issuance of

4  the subpoena that is the subject of the present dispute ("Subpoena"). Intermec's Response offers

5  no evidence or argument beyond a rehashing of the position it took before this Court leading to the

6  Court's Order of May 15, 2009, quashing Intermec's Subpoena in its entirety. (Order Quash.

7  Subpoena ("Order") May 15, 2009.)

8      Intermec now relies on its unilateral and self-serving assertion that the Subpoena was

9  "reasonable" and issued in "good faith." These assertions, Intermec argues, should now somehow

10  excuse the fact that it issued and pursued through motion practice a subpoena that this Court

11  recognized as "massively overbroad." (Order at 4.)

12      Intermec's position is contradicted by the sworn record. Despite repeated attempts by

13  Google to craft a compromise that would mitigate the burden imposed by the Subpoena, Intermec

14  consistently refused to narrow the ultimate scope of its Subpoena. Instead, during the course of its

15  professed "good faith" negotiations, Intermec actually sought to enlarge Google's burden under

16  the Subpoena. Even assuming that Intermec initially believed Google's burden under the

17  Subpoena would be "minimal" -- despite the Subpoena's facial overbreadth -- Intermec's

18  continuing assertions as to the reasonableness of the Subpoena's scope are simply not credible in

19  light of the record reflecting the parties' correspondence and their positions taken before this

20  Court.

21      For these and the additional reasons set forth below, Google respectfully urges this Court

22  to order Intermec to reimburse Google's reasonable expenses related to responding to and

23  opposing Intermec's Subpoena.

24

## II.    Factual Background

25      Despite the long-standing deadlines for fact discovery in the underlying Delaware case, it

26  was Intermec that chose to seek last-minute, third-party discovery from Google. Intermec issued

27  its Subpoena to Google on March 24, 2009. *See* Declaration of Scott T. Weingaertner in Support

28                                      1

GOOGLE'S OPPOSITION TO INTERMEC'S                    CASE NO. 09-80097 MISC WHA
RESPONSE TO ORDER TO SHOW CAUSE

1  of Google's Opposition to Intermec Response to Order to Show Cause re Sanctions

2  ("Weingaertner Decl."), ¶ 15, Exh. B.  Intermec had previously issued an identical subpoena three

3  weeks earlier on March 2, 2009 despite the then-standing deadline that fact discovery be

4  completed by March 16, 2009 -- initially affording Google with apparently only ten business days

5  for compliance.  *Id.*, Exh. C.  The Delaware scheduling order, which had already been extended, at

6  least once, had been in place since November 10, 2008.  *Id.*, Exh. I.  The original scheduling order,

7  dated August 16, 2007, had set a deadline for fact discovery to be completed by July 1, 2008,

8  nearly a year ago.  *Id.*, Exh. J.

9         Intermec's Responsive papers misstate the history of the parties' correspondence.  Where

10  Intermec claims that negotiations between the parties broke down at the eleventh hour, despite

11  alleged objective progress (*see* Intermec Resp. 2), Intermec's proposal to "limit" the discovery to

12  two Google applications was in fact no limitation at all (*see* Weingaertner Decl., ¶¶ 15, 17, 21), as

13  recognized in this Court's Order of May 15, 2009.  Rather, Intermec admitted that the two Google

14  applications would merely be an "initial[] focus."  Weingaertner Decl., at ¶ 21.  Intermec

15  explicitly and repeatedly reserved the right to enforce the full scope of its Subpoena (Weingaertner

16  Decl., ¶ 21, Exhs. D, F) by taking burdensome discovery from Google, according to criteria that it

17  was unwilling to share with Google or even with this Court.

18         Intermec also omits mention of Google's offer to provide discovery relating to a single

19  application focusing on the issue of downloads to Palm devices.  *Id.* at ¶ 24, Exh. G.

20         Additionally, Intermec's April 30th correspondence is euphemistically styled a "fair

21  summation" of the Subpoena, yet it actually *enlarged* Google's burden under the Subpoena

22  instead of narrowing it.  Weingaertner Decl., ¶ 21, Exh. D.  Intermec's letter demanded that

23  Google provide "a list of protocols or scripting languages" for mobile versions of Google

24  applications and "[g]eneral information regarding the architecture used in Google

25  applications/products (for example, identifying the tiers and the functions each tier performs)."  *Id.*

26  at ¶ 21, Exh. D.

27

28

GOOGLE'S OPPOSITION TO INTERMEC'S                    CASE NO. 09-80097 MISC WHA
RESPONSE TO ORDER TO SHOW CAUSE

1    Contrary to Intermec's Response, Google consistently made clear the extreme overbreadth
2    of the Subpoena and the burden it would impose. *Id.* at ¶¶ 14, 27.  Google opposed this Subpoena
3    from the outset and did not once acquiesce to what was Intermec's demand for open-ended,
4    iterative discovery of all of Google's applications.  Intermec was on abundant notice of the
5    extraordinary scope of the Subpoena in the weeks leading up to the motion practice before this
6    Court. *See id.*

7    Finally, on the day this Court quashed the Subpoena in its entirety, counsel for Intermec --
8    without the courtesy of any notice to Google -- contacted the Delaware Court.  In an ensuing
9    teleconference before Magistrate Judge Stark, which Intermec also failed to apprise Google of,
10   Intermec indicated that it intended to "reissue a subpoena out of Delaware related to Google with a
11   relatively quick return date...," (*id.* at ¶ 28, Exh. H, Tr. at 6: 16-18) notwithstanding the Protective
12   Order granted by this Court.  (Order at 5.)

13                              **III.      Argument**

14   **A.      An Award of Sanctions is Appropriate Under Applicable Law**

15   Fed. R. Civ. P. 35(A) provides that a prevailing party seeking a protective order, as Google
16   was forced to do here, shall recover the reasonable expenses in making the motion unless:  "(i) the
17   movant filed the motion before attempting in good faith to obtain the disclosure or discovery
18   without court action; (ii) the opposing party's nondisclosure, response, or objection was
19   substantially justified; or (iii) other circumstances make an award of expenses unjust."  Because
20   Intermec has not provided evidence even remotely satisfying any of these three categories, an
21   award of expenses is appropriate here.  First, Google engaged Intermec in repeated good faith
22   negotiations from the outset of the Subpoena's issuance.  Weingaertner Decl., at ¶¶ 8, 12-14, 19;
23   *see also* Order at 5.  Second, Intermec has not shown substantial justification for its position.
24   Intermec presents two arguments as justification for why it should not pay Google's expenses:
25   that it made "every effort" to minimize Google's burden under the Subpoena; and that it
26   subjectively believed the Subpoena was reasonable.  As discussed below, neither of these
27   assertions are substantiated.  Third, Intermec does not present any additional genuine arguments,
28

                                            3
GOOGLE'S OPPOSITION TO INTERMEC'S                      CASE NO. 09-80097 MISC WHA
RESPONSE TO ORDER TO SHOW CAUSE

1   as further discussed below, why an award of expenses would not be appropriate under Fed. R. Civ.

2   P. 35(A).

3       Case law of this District supports an award of expenses in this dispute.  Contrary to

4   Intermec's assertions, and as elaborated upon below, Intermec's conduct does indeed fall squarely

5   within the scope of *High Tech Medical Instrumentation, Inc. v. New Image Indus., Inc.*, 161

6   F.R.D. 86 (N.D. Cal. 1995).  In that case, the Court awarded sanctions where a party that issued

7   the subpoena refused to limit the scope of an unreasonably overbroad subpoena.  As this Court has

8   already determined, the Intermec Subpoena was unreasonably overbroad.  *See* Order at 4.  Despite

9   its unsupported assertions, Intermec refused to limit the actual scope of this Subpoena and even

10  attempted to enlarge Google's burden under the Subpoena, as described above.  Thus, an award of

11  Google's expenses is appropriate.

12      **B.**      **Intermec's "Belief in the Reasonableness" of its Subpoena is Neither**
             **Credible Nor Relevant**
13

14      Intermec's professed subjective belief that its Subpoena was "reasonable" fails for several

15  reasons.  First, Intermec's mere subjective belief in the reasonableness of its Subpoena requests is

    irrelevant.  Second, the requests as drafted were objectively burdensome, as Google repeatedly
16
    explained to Intermec.  Weingaertner Decl., ¶¶ 14, 19, Exh. A.  Third, Intermec's "documents
17
    sufficient to show" language did not reasonably limit the Subpoena's scope, since the overbreadth
18
    of the requests themselves prevented Google from providing any summary-type documents.
19
    Fourth, Intermec's continuing failure to provide either Google or this Court with an intelligible
20
    theory of relevance behind the Subpoena, even now, all but confirms that the discovery Intermec
21
    had sought was not actually relevant to the underlying Delaware patent infringement case.
22
    Finally, Intermec's assertion that other nonparties, such as Microsoft, have complied with their
23
    subpoenas misses the mark, because i) the subpoena to Microsoft appears to be more limited in
24
    scope than the subpoena to Google and ii) the transcript of Intermec's May 18, 2009 discovery call
25
    in its Delaware action seems to indicate that other subpoenaed nonparties may not, in fact, have
26
    completed their burdens under the subpoenas (Weingaertner Decl., Exh. H at 5: 4-6) -- which, if
27

28                                              4
    _____
    GOOGLE'S OPPOSITION TO INTERMEC'S                        CASE NO. 09-80097 MISC WHA
    RESPONSE TO ORDER TO SHOW CAUSE

1    true, would be contrary to representations made by counsel for Intermec at the May 15, 2009

2    hearing before this Court.  Weingaertner Decl., Exh. E at 11: 8-11.

            1.    **Intermec's Alleged Subjective Belief in the Subpoena's**
3                 **Reasonableness is Irrelevant and Lacks Credibility in View of**
4                 **the Subpoena's Objective Unreasonableness**

5          Intermec's professed subjective belief as to the reasonableness of the Subpoena should not

6    stand where this Court has found the Subpoena's scope to be objectively unreasonable.  Intermec,

7    in its Response, repeatedly alleges its subjective belief in the reasonableness of the Subpoena's

8    scope.  However, the extreme breadth of the requests renders this subjective belief unreasonable.

9    This Court's finding that "the subpoena is drawn in massively overbroad and burdensome terms"

10   (Order at 4) itself indicates that the requests were not objectively reasonable.  As the Court found,

11   the Subpoena "calls for more evidence than is often produced by litigants themselves in many

12   federal actions in our district."  *Id.*  Moreover, Intermec has cited no authority for the proposition

13   that its subjective belief alone would suffice to excuse as to an objectively unreasonable

14   Subpoena.  Thus, Intermec's subjective belief is irrelevant in light of the Subpoena's plainly

15   unreasonable scope.

16         Intermec's alleged subjective belief that the documents it sought were reasonable and

17   "within the scope of permissible discovery" (Intermec Resp. 8) also lacks credibility in view of the

18   multiple conversations with Google's counsel, where Google repeatedly explained the enormity of

19   the burden Intermec's Subpoena would impose.  Weingaertner Decl., ¶ 14, 19.

20         Although the Federal Rules of Civil Procedure permit a broad range of discovery, "a right

21   to discovery is not unlimited."  *Micro Motion Inc. v. Kane Steel Co.,* 894 F.2d 1318, 1322 (Fed.

22   Cir. 1990).  This is especially true in light of Google's nonparty status in this case.  As this Court

23   noted, "(r)equests to non-parties should be narrowly drawn to meet specific needs for

24   information." (Order at 4.)  Nevertheless, Intermec persisted in demanding facially overbroad and

25   in fact nearly unbounded discovery regarding *all* applications created and owned by Google.

26   (Subpoena Doc. Req. and Topic #5.)  Its supposed "limit" to two applications was never reflected

27   by any true offer to modify the scope of the Subpoena.  Weingaertner Decl., ¶ 21.

28
                                              5

2. **The "Documents Sufficient To Show" Language Did Not Mitigate Google's Burden Under the Subpoena**

Intermec now rehashes its original unsuccessful attempt to characterize its Subpoena as reasonable in that it merely requested "documents sufficient to show" the information. (Intermec Resp. at 5). Yet Google made Intermec fully aware that the information it sought was complex and wide-ranging, rendering the "sufficient to show" language essentially meaningless. For example, Mr. Weingaertner noted in his May 5, 2009 correspondence to Mr. Hansen:

> [W]hile the document requests in the outstanding subpoena might appear to the uneducated eye to be limited in scope by asking for "documents sufficient to show," the subjects sought to be shown, such as "access" in Request Nos. 1,2 and 5, and "communicate information" in Request Nos. 3 and 4, are vague and apparently very broad. In view of the complexity of Google's applications, it would be an extreme, and plainly undue, burden for Google to respond to Intermec's requests in their current form, and for all Google applications Intermec has targeted.

Weingaertner Decl., ¶ 14, Exh. A.

3. **Intermec Failed to Provide a Theory of Relevance that Would Have Facilitated Google's Compliance with the Subpoena**

Intermec's failure to provide a credible theory of relevance behind the Subpoena, even at this late stage in the dispute, further undercuts Intermec's professed sincerity in claiming it believed the Subpoena was reasonable. Despite repeated requests by Google's counsel, Intermec simply refused to describe the relevance of the information sought by the Subpoena. Weingaertner Decl., ¶ 16. Worse still, assuming Intermec did actually have a theory of relevance to support its Subpoena, it failed to provide this information to this Court in its Motion to Compel. Even at the hearing, Intermec's counsel was unable to justify its Subpoena to this Court, making only the most conclusory and unsupported statements such as that the information was "likely to lead to the discovery of admissible evidence." Weingaertner Decl., Exh. E, at 13: 7-9.

Although this Court's Order did not invite it to do so, Intermec has appended a declaration allegedly attesting to relevance -- but this, too, completely fails to make any specific showing of any relevance. Intermec's expert's purported statements of relevance, even if they had been

6

GOOGLE'S OPPOSITION TO INTERMEC'S
RESPONSE TO ORDER TO SHOW CAUSE

CASE NO. 09-80097 MISC WHA

1    invited by this Court, would merely have amounted to how the requested information will provide

2    "real-world example(s)" of various, broadly-defined functions.  But Intermec makes no patent

3    attempt to show how a "real world example" has any nexus to the legal merits of its Delaware

4    infringement case against Palm.  Declaration of Jeffrey Hansen in Support of Intermec Response

5    to Order to Show Cause re Sanctions ("Hansen Decl.") , ¶ 21, Exh. I.  Moreover, neither

6    Intermec's expert nor its counsel have come forward with any evidence that Intermec ever

7    expended any technical effort to investigate how Google Applications "operate" on Palm devices.

8    Weingaertner Decl., ¶ 26.

9                    4.    **Intermec's Citation of "Nearly Identical Subpoenas" is**
                           **Misleading:  The Subpoenas are Not Identical and the Parties**
10                          **May Not Have Finished their Obligations Under Their**
                           **Respective Subpoenas**
11

12            Finally, as support for its position that its belief was reasonable, Intermec cites the "nearly

13    identical" subpoenas which other nonparties have supposedly complied with.  (Intermec Resp. at

14    9).  This statement, too, is misleading.  For example, the Microsoft subpoena topics appear to be

15    limited to one or two applications, to the Palm devices, and to specific features (e.g. storing data

16    on the onboard memory of Palm devices).  Hansen Decl., ¶ 4, Exh. A.  Thus, these topics appear

17    facially narrower in scope than the topics in Google's subpoena.  Intermec therefore improperly

18    points to other nonparty compliance as justification for believing Intermec's much broader

19    requests to Google were reasonable.   Furthermore, the record appears to reveal discrepancies as to

20    the actual extent of the other parties' compliance with their respective subpoenas.  For example,

21    counsel for Intermec represented to this Court at the May 15, 2009 hearing that "[t]hese same

22    requests went to Microsoft, Verizon, AT&T and Sprint, and they understood what we were asking

23    for and not only complied with the subpoena but have produced people who had the capability to

24    talk."  *See* Weingaertner Decl., Exh. E, at 11: 8-11; Order at 4.  Yet after this hearing, apparently

25    in the course of attempting to clear the way for a Delaware Subpoena against Google, counsel for

26    Intermec represented to the Delaware Court on May 18, 2009 that "…that just leaves these other

27    three (subpoenas), Microsoft, AT&T and Google, *that are not complete as of today*…" and that

28
                                                    7

1    "the Microsoft deposition was originally scheduled for May 12th, I think it was, and because of

2    some scheduling issues for Microsoft, had to be pushed back after May 18." Weingaertner Decl.,

3    Exh H, at 5: 2-11 (emphasis added).  Thus, despite Intermec's representations to this Court that the

4    other parties had fully completed their obligations under the subpoenas, it is not clear from the

5    record that this is actually the case.

C.    **Intermec's "Good Faith Negotiation" Argument is Not Supported by**
6
     **Intermec's Actual Course of Dealing**
7
         Intermec's contention that it engaged in good faith negotiations is belied by the following
8
    facts:  (i) no matter what it supposedly "offered" during phone calls with Google's counsel,
9
    Intermec never modified the original scope of the Subpoena; (ii) Intermec actually attempted to
10
    broaden the scope of the Subpoena through Mr. Hansen's April 30th letter (*See* Weingaertner
11
    Decl., ¶ 21, Exh. D); (iii) Intermec never explained the relevance of the discovery, much less in
12
    writing; and (iv) Intermec never apprised Google of its activities before the Delaware Court, after
13
    the issuance of this Court's Protective Order, seeking to pursue additional discovery from Google
14
    through a Delaware subpoena.  Intermec's assertions now, unfortunately, are not supported by
15
    these facts.
16

1.    **Intermec Refused Google's Compromises Towards Limiting the**
17
     **Subpoena's Scope**

18       Intermec refused Google's repeated attempts to reach a workable scope of the Subpoena.

19   Google, for its part, offered to provide discovery related to a single application.  Weingaertner

20   Decl., Exh. G.  Google additionally offered to provide discovery limited to the issue of downloads

21   to Palm Devices.  *Id.*  These offers were intended, in part, to facilitate Intermec's compliance with

22   the extended discovery schedule in its underlying Delaware case.  Intermec summarily refused

23   Google's offers, stating "…we cannot accept it and will be filing our motion to compel against

24   Google as soon as possible."  *Id.*, Exh. K.

25         2.    **Intermec Never Actually Limited the Subpoena's Scope**

26       Intermec's claim that it "made every effort to minimize Google's burden of compliance"

27   (Intermec Resp. 2) is not supported by the facts.  As the Court recognized in its Order, Intermec

28
                                                      8

1   never offered to actually limit the scope of the Subpoena, notwithstanding Mr. Hansen's

2   Declaration to the contrary.  Mr. Hansen's correspondence either enlarged the scope of the

3   Subpoena, through his April 30th correspondence as discussed above, or imposed a preferred order

4   on production and testimony beginning with two applications selected by Intermec -- with

5   Intermec purporting to retain a right to have Google continue producing documents and witnesses

6   at Intermec's pleasure.  Weingaertner Decl., Exh. D.  At no point did Intermec's counsel even

7   attempt to substantively narrow the scope of the actual Subpoena, despite Google's continued

8   indications that the Subpoena, as drafted, was too burdensome to comply with.  Weingaertner

9   Decl., ¶ 27, Exh. G.  Intermec's negotiation tactics therefore establish that not only did Intermec

10  act equivocally, at best, but that it in fact brazenly persisted in engaging in what this Court

11  correctly recognized as a fishing expedition.  (Order at 4.)

### 3.    Google Never Conditioned Compliance Upon Receiving a Covenant Not to Sue

Intermec's continued insistence that Google conditioned its compliance with the Subpoena

upon receiving a covenant not to sue is also false and plainly contradicted by the sworn record.

Google's request for an explanation of Intermec's intentions regarding lawsuits against Google

was reasonable in light of the broad and open-ended inquiries propounded by the Subpoena. *See*

Weingaertner Decl., ¶ 25.  This request was also justified in view of Intermec's unwillingness to

provide Google with any real theory of the relevance of the nonparty discovery it was seeking.

Google's submission of a Proposed Order to this Court that would have directed Google to

provide information and testimony related to a Google application, in the absence of any covenant

not to sue, confirms that Google's compliance with the Subpoena was in no way conditioned upon

any such covenant.  (*See* Proposed Order, May 8, 2009.)

This conclusion is also borne out by the May 5th, 2009 correspondence from Mr.

Weingaertner to Mr. Hansen, which is directed towards pointing out the carefully worded

language of Mr. Hansen's April 30th, 2009 letter regarding Intermec's intentions with respect to

adding Google as a party to this suit.  Mr. Hansen stated that, "it *has not been* Intermec's

9

1   intention to join Google as a party to this litigation…."  Weingaertner Decl., Exh. D (emphasis

2   added).  Mr. Weingaertner's May 5th, 2009 correspondence points out that this language refers

3   only to Intermec's prior intention and does not make clear Intermec's present or future intentions

4   regarding Google.  Weingaertner Decl., Exh. A.  Despite Intermec's continued assertions, in no

5   way did this correspondence, or any other communication to Intermec's counsel, condition

6   Google's prospective compliance with the Subpoena upon receiving a covenant not to sue.  Yet,

7   Intermec's refusal to respond to Google's inquiry would be consistent with an intention on the part

8   of Intermec to use its Subpoena to improperly fish for a subsequent patent infringement charge.

9                **4.   Intermec's Activities Post-Issuance of the Protective Order**
                       **Undermine Intermec's Professed "Good Faith" Negotiation**
10                      **Argument**

11          Intermec's apparent efforts to circumvent this Court's Protective Order to procure

12   additional discovery from Google through a Delaware Subpoena further undermines Intermec's

13   attempt to portray itself as a "good faith" participant in this process.  As discussed above, after this

14   Court granted the Protective Order, Intermec -- without notice to Google -- raised the possibility

15   of re-issuing its subpoena out of the Delaware Court "with a relatively quick return date," in spite

16   of the Protective Order issued by this Court.  Weingaertner Decl., ¶ 28, Exh. H, at 6: 18.

17   Intermec's failure to apprise Google of its Delaware activities after this Court's issuance of its

18   Order undermines Intermec's position that it has sought discovery from Google in good faith.

19                                  **IV.    Conclusion**

20          Intermec has provided no basis for showing why it should not be required to pay the

21   expenses that Google has incurred as a result of this Subpoena.  An award of Google's expenses is

22   appropriate here, where Google has had to defend itself against unjustifiably broad discovery

23   requests.  Intermec has not come forth with any substantive explanation as to why it should not

24   pay Google's expenses.  Instead, Intermec has continued to mischaracterize documents and

25   testimony to further its ends.  Google respectfully urges that this Court issue sanctions and require

26   Intermec to pay Google's expenses related to the Subpoena.  If the Court concludes that sanctions

27   are appropriate, Google is prepared to furnish to the Court within twenty four hours a bill and

28                                        10

1  supporting documentation as to its reasonable costs associated with the subpoena and motion.

2

3  DATED: May 29, 2009                    KING & SPALDING LLP

4

5                                         By   /s/ Lisa Kobialka
                                              Scott T. Weingaertner (*pro hac vice*)
6                                             Paul J. Andre
                                              Lisa Kobialka
7
                                              Attorneys for Google Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    11
GOOGLE'S OPPOSITION TO INTERMEC'S              CASE NO. 09-80097 MISC WHA
RESPONSE TO ORDER TO SHOW CAUSE