| | |
|---|---|
| 1 | SCOTT T. WEINGAERTNER (*pro hac vice*)<br>(sweingaertner@kslaw.com) |
| 2 | KING & SPALDING LLP<br>1185 Avenue of the Americas |
| 3 | New York, NY 10036-4003<br>Telephone: (212) 556-2100 |
| 4 | Facsimile: (212) 556-2222 |
| 5 | PAUL J. ANDRE, Bar No. 196585<br>(pandre@kslaw.com) |
| 6 | LISA KOBIALKA, Bar No. 191404<br>(lkobialka@kslaw.com) |
| 7 | KING & SPALDING LLP<br>333 Twin Dolphin Drive, Suite 400 |
| 8 | Redwood Shores, CA 94065<br>Telephone:   (650) 590-0700 |
| 9 | Facsimile:   (650) 590-1900 |
| 10 | Attorneys for Nonparty<br>GOOGLE INC. |

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| INTERMEC TECHNOLOGIES CORP.,<br>a Delaware Corporation,<br><br>          Plaintiff,<br><br>          v.<br><br>PALM, INC., a Delaware Corporation,<br><br>          Defendant. | CASE NO. 09-80097 MISC WHA<br><br>Related to:<br><br>CASE NO. 09-80098 MISC WHA<br><br>**DECLARATION OF SCOTT T. WEINGAERTNER IN SUPPORT OF GOOGLE INC.'S OPPOSITION TO INTERMEC'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS** |

I, Scott T. Weingaertner, hereby declare as follows:

1. I am a Partner in the law firm of King & Spalding LLP, based in the firm's New York office.

2. I am a resident of the State of New Jersey over 18 years of age, have knowledge of the facts stated herein, and would testify to the same before this Court if called upon to do so.

3. I am counsel for Google Inc. ("Google") in this matter.

4. I submit this Declaration in support of Google's Opposition to Intermec's Response to Order to Show Cause re Sanctions and, in particular, to correct or otherwise address certain assertions contained in the Declaration of Jeffrey Hansen appended to the Response of Intermec Technologies Corp. (hereinafter "Intermec").

5. I am admitted to practice law in New York, and have been actively practicing patent litigation since my admission to the Bar of the State of New York in January of 1993.

6. At the request of Google, I have represented the company in this matter since approximately the latter half of April, 2009.

7. I have significant first-hand experience in handling discovery for Google in a number of active patent infringement matters respectively concerning individual features of Google applications. As a result of my significant first-hand experience, I was able to, and did, provide informed conclusions to Intermec as to the burdens associated with documentary discovery and testimony concerning the functionality of Google applications, as demanded by its subpoena of Google ("the Subpoena").

8. Prior to my initial communications with counsel for Intermec in this matter, and contrary to Mr. Hansen's suggestion (Declaration of Jeffrey Hansen in Support of Intermec Response to Order to Show Cause re Sanctions ("Hansen Decl.") ¶ 16), I was fully informed of communications and negotiations between Google's responsible in-house counsel and counsel for Intermec.

9. My understanding is that Intermec, in its discussions with in-house counsel for Google, never actually modified or offered to modify the ultimate scope of its Subpoena. This

- 1 -

understanding is corroborated by subsequent communications with counsel for Intermec, both written and oral.

10. Though requested by Google in-house counsel, Intermec never provided any justification for its Subpoena or its scope.

11. Intermec's refusal to provide Google in-house counsel with narrowed subpoena topics for testimony or requests for documents, or to provide a justification for the company-wide nonparty discovery it demanded from Google, was corroborated by my experience in communicating with Intermec.

12. I first spoke with counsel for Intermec in the afternoon of Wednesday, April 29, 2009. During that call, I requested that Mr. Hansen describe how Intermec contends that Google's confidential information as identified in Intermec's Subpoena would be relevant to its pending case against Palm. To the same end, I requested an identification of Intermec's asserted claims.

13. Also during this initial call of April 29, 2009, with Intermec counsel, I requested that, to the extent Intermec was seeking information from Google in connection with its allegations of infringement, Intermec should provide available claim construction positions and infringement contentions (and Google expressed willingness to accept them in redacted form to protect the proprietary interest of Palm) in order to lay out its theory of relevance with definiteness and clarity.

14. In addition, during the same initial call, I described from first-hand experience how Intermec's Subpoena would impose an enormous and apparently company-wide burden on Google. That description was reflected in my subsequent letter of May 5, 2009 at page 1. Attached hereto as Exhibit A is a true and correct copy of my May 5, 2009 letter. This letter contradicts Mr. Hansen's assertion at paragraph 19 of his Declaration. In addition, during the April 29, 2009 call, I described how it appeared unlikely that any highly simplified documents (of the sort Mr. Hansen has identified as "Google For Dummies"-type documents in paragraph 14 of his Declaration) would be in Google's possession, since Google's documentation tends to be prepared for the consumption of Google engineers, unlike those apparently obtained from

- 2 -

DECLARATION OF SCOTT WEINGAERTNER ISO
GOOGLE'S OPPOSITION TO INTERMEC'S RESPONSE
TO ORDER TO SHOW CAUSE RE SANCTIONS

CASE NO. 09-80097 MISC WHA

Microsoft, per paragraph 4 of the Hansen Declaration (which according to Mr. Hansen during the call of April 29, 2009, may have been intended not for internal use only, but for Microsoft third-party developers or customers).

15. Rather than narrow the scope of its Subpoena, Intermec effectively sought to broaden it. Whereas Intermec's Subpoena contained the following Topic and Request: "The manner in which Google Applications, such as Google Maps, Google Calendar, Google Docs, Gmail, and Picasa, store and access data," Intermec's letter of April 30, 2009 includes the following: "General information regarding the architecture used in Google products/applications (for example, identifying the tiers and the functions each tier performs)." Attached as Exhibit B is a true and correct copy of Intermec's March 24, 2009 subpoena to Google, as Exhibit C is a true and correct copy of Intermec's March 2, 2009 subpoena to Google, and as Exhibit D is a true and correct copy of Intermec's April 30, 2009 letter from Jeffrey Hansen to me.

16. To date, Intermec has not set forth a justification for asserting that any of the targeted Google confidential information is relevant to its case against Palm. (*See* Exhs. D, F, and K introduced respectively at ¶ 15, *supra,* and ¶¶ 21 and 31, *infra. See also* Paragraph 26 below, addressing Intermec's Expert's failed attempt to shed light on Intermec's theory).

17. Intermec's portion of the negotiation has involved purporting to offer to *accept* initial production of a subset of virtually the entirety of Google's products, but otherwise not agree to actually narrow or otherwise modify the topics and requests of the subpoena of Google.

18. As I described to this Court during the May 15, 2009 hearing, on more than one occasion Mr. Hansen and/or his colleagues stated that Intermec would *begin* with certain applications to see which ones "fit" their theory and that they would stop asking Google for production once it obtained documents and testimony that "fit." *See* Transcript of the Hearing of May 15, 2009 at 6: 16-20, attached hereto as Exhibit E. Intermec has never explained to Google or this Court what it would actually mean for Google information to "fit." My explanation to the Court of Intermec's intention to proceed application by application until it found a "fit," was not rebutted by Intermec counsel at oral argument. See Exh. E, Tr. at 16.

- 3 -

DECLARATION OF SCOTT WEINGAERTNER ISO　　　　　　　　　　　　　CASE NO. 09-80097 MISC WHA
GOOGLE'S OPPOSITION TO INTERMEC'S RESPONSE
TO ORDER TO SHOW CAUSE RE SANCTIONS

19. During the call with Mr. Hansen of April 29, 2009, I discussed on the basis of firsthand knowledge (attested to above), combined with ongoing internal investigation, that the effort to respond to the Subpoena would be significant even for a single Google application. Specifically, based on collection and production of technical documentation in connection with actual litigation to which Google is a party, involving *a single feature of a single application*, the burden was quite significant. The effort across all Google applications (since all were targeted in the actual subpoena) would roughly multiply the burden by the number of such applications, far more burdensome than the onus on a typical patent infringement defendant.

20. Mr. Hansen avers that he "emphasized that Intermec was seeking to minimize the impact on Google." Hansen Decl., ¶ 8. What Mr. Hansen is apparently referring to is Intermec's position that it wished to proceed -- application by application -- through all of Google's applications until finding one with documents and testimony that "fit" its theory, a theory that has not been supplied to Google or the Court. But again Intermec did not reduce or otherwise modify the actual scope of its company-wide Subpoena, never did so in writing, and explicitly reserved its rights under the Subpoena   *See* Exhs. D and F, introduced respectively at ¶ 15, *supra* and ¶ 21, *infra*.

21. I disagree with Paragraph 15 of Mr. Hansen's Declaration. Whether or not it is the case that Intermec offered to begin its inquiry by focusing on discovery of two Google applications, Intermec was very clear that these applications would form only its "initial focus" and that it would in no way narrow the full scope of its Subpoena. Exh. D. *See also* Mr. Hansen's May 8, 2009 e-mail to me, a true and correct copy of which is attached hereto as Exhibit F. The April 30th letter sent by Mr. Hansen would have enlarged the burden on Google, demanding that Google provide a "a list of protocols or scripting languages" for mobile versions of Google applications and "[g]eneral information regarding the architecture used in Google applications/products (for example, identifying the tiers and the functions each tier performs)." Exh. D.

- 4 -

DECLARATION OF SCOTT WEINGAERTNER ISO
GOOGLE'S OPPOSITION TO INTERMEC'S RESPONSE
TO ORDER TO SHOW CAUSE RE SANCTIONS

CASE NO. 09-80097 MISC WHA

22. I disagree with the assertions in paragraph 16 of Mr. Hansen's Declaration. First, Mr. Hansen's assertion that the undersigned was not "informed by [my] client of [the] previous discussions [with Intermec] regarding the relevance of Intermec's subpoena" is untrue. Intermec did not provide Google in-house counsel with any intelligible theory of relevance of the nonparty discovery it was seeking, as borne out by the written record before the Court.

23. I also disagree with the assertions in paragraph 16 of Mr. Hansen's Declaration, in particular Mr. Hansen's assertion of "repeated offers to [the undersigned] of having one or more of the patent/technical specialists on our legal team walk [the undersigned] through the information Intermec was seeking, and answer any of his questions at a higher level of detail." This statement is not well-taken: I requested that Intermec provide its relevance theory in writing, but never received it. Mr. Hansen was himself either unable or unwilling to articulate Intermec's theory of relevance or willing to present its theory to Google or this Court in written form.

24. I disagree with the assertion in paragraph 17 of Mr. Hansen's Declaration. Mr. Hansen refers to Google's "ever-increasing list of demands". Again, this assertion is not supported by the facts. Google never asked for information other than Intermec's theory of relevance, which Intermec never provided. In order to help discern that theory in the absence of any intelligible or written explanation, Google had maintained its requests for (i) an identification of asserted claims, (ii) Intermec's claim construction, and (iii) Intermec's infringement contentions (suitably redacted to protect Palm). Attached hereto as Exhibit G is a true and correct copy of my e-mail to Mr. Hansen dated May 7, 2009. *See also* Exh. A. These requests were directed to documents that Intermec must, at this late stage of its patent infringement case against Palm, have ready at hand. As Intermec's case has now been pending for two years and the close of its repeatedly extended fact discovery period is imminent, Intermec is likely already in possession of these documents and/or information; its unwillingness to share this information under the Protective Order in this case, while at the same time seeking nonparty discovery of confidential information regarding nearly all of Google's applications, is ironic.

- 5 -

DECLARATION OF SCOTT WEINGAERTNER ISO
GOOGLE'S OPPOSITION TO INTERMEC'S RESPONSE
TO ORDER TO SHOW CAUSE RE SANCTIONS

CASE NO. 09-80097 MISC WHA

...

25. I also disagree with Mr. Hansen's mischaracterization regarding Google's inquiry of Intermec regarding its intentions to sue. At oral argument before this Court, counsel for Intermec incorrectly asserted that Google sought to condition its nonparty production on receiving a covenant from Intermec not to sue. Weingaertner Decl., Exh. E, Tr. at 19: 4-9. I brought this incorrect assertion to the Court's attention at oral argument (Exh. E, Tr. at 20: 5-10) and Intermec's counsel by his silence tacitly acknowledged that he had not correctly characterized these facts to the Court. Indeed, it was not possible for Intermec's counsel to contradict Google on this point, because Google had appended to its Motion to Quash a proposed order in which Google would have produced nonparty evidence in the absence of any covenant by Intermec not to sue. Finally, Mr. Hansen has omitted any mention of Google's repeated attempts to negotiate a compromise, none of which were conditioned on a covenant not to sue.

26. Neither Mr. Hansen nor Dr. Nettleton, the expert Intermec engaged to present a theory of relevance to support Intermec's Subpoena of Google, has come forward with any evidence that Intermec undertook any effort to investigate, as a technical matter, how Google applications "operate" on Palm devices. Mr. Hansen's Declaration, while asserting that the undersigned's explanation of the discovery burden of Intermec's subpoena of Google was inadequate, is silent on this matter, as is Dr. Nettleton's Declaration.

27. I also disagree with the statements in paragraph 19 of Mr. Hansen's declaration. During every call with Mr. Hansen, I explained from first hand experience the extreme burden imposed by the topics and requests of Intermec's Subpoena. I explained at a high level how the teams working on various Google applications generally tend to be organized, how the teams differ from application to application, how the client and server sides generally require distinct inquiries, how personnel are not all located in one office or even one country, and how the discovery of the sort Intermec was seeking, when targeted at a single feature of a single application was a significant fraction of a full blown patent litigation – so that seeking all features

- 6 -

DECLARATION OF SCOTT WEINGAERTNER ISO
GOOGLE'S OPPOSITION TO INTERMEC'S RESPONSE
TO ORDER TO SHOW CAUSE RE SANCTIONS

CASE NO. 09-80097 MISC WHA

1  of all applications and all versions without any temporal limitation would be extraordinarily
2  burdensome.
3      28.    On May 15, 2009, the day this Court issued its Order Quashing Intermec's
4  Subpoena, Intermec contacted the Delaware Court to arrange a call with Magistrate Judge Stark.
5  Intermec did not pay Google the courtesy of any notice of this call. The call with Judge Stark was
6  held on May 18, 2009, and a transcript of that hearing is attached hereto as Exhibit H. Counsel for
7  Intermec, during that hearing, indicated that Intermec intended to "reissue a subpoena out of
8  Delaware related to Google with a relatively quick return date…" Exh. H, Tr. at 6: 16-18.
9      29.    Attached as Exhibit I is a true and correct copy of the November 10, 2008
10 Scheduling Order in the underlying Delaware case.
11     30.    Attached as Exhibit J is a true and correct copy of the August 16, 2007 Scheduling
12 Order in the underlying Delaware case.
13     31.    Attached as Exhibit K is a true and correct copy of the May 7, 2009 e-mail from
14 Mr. Hansen to myself.
15     I declare under penalty of perjury under the laws of California and the United States that
16 the foregoing is true and correct. Executed on May 29, 2009, in New York, New York.

_____
Scott T. Weingaertner

- 7 -

DECLARATION OF SCOTT WEINGAERTNER ISO          CASE NO. 09-80097 MISC WHA
GOOGLE'S OPPOSITION TO INTERMEC'S RESPONSE
TO ORDER TO SHOW CAUSE RE SANCTIONS